## SLODOV *v.* UNITED STATES

No. 76–1835.  Argued February 22, 1978—Decided May 22, 1978

BRENNAN, J., delivered the opinion of the Court, in which STEWART, MARSHALL, POWELL, REHNQUIST, and STEVENS, JJ., joined. REHNQUIST, J., filed a concurring opinion, *post*, p. 260. WHITE, J., filed an opinion dissenting in part, in which BURGER, C. J., and BLACKMUN, J., joined, *post*, p. 261.

*Bennet Kleinman* argued the cause for petitioner. With him on the briefs was *Laurence Glazer*.

*Deputy Solicitor General Barnett* argued the cause for the United States. On the brief were *Acting Solicitor General Friedman, Assistant Attorney General Ferguson, Stuart A. Smith,* and *William A. Friedlander*.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Petitioner, an orthodontist by profession, on January 31, 1969, purchased the stock and assumed the management of three corporations engaged in the food vending business. The corporations were indebted at the time of the purchase for approximately $250,000 of taxes, including federal wage and Federal Insurance Contribution Act (FICA) taxes withheld from employees' wages prior to January 31. The sums withheld had not been paid over when due, however, but had been dissipated by the previous management before petitioner acquired the businesses. After petitioner assumed control, the corporations acquired funds sufficient to pay the taxes, but petitioner used the funds to pay employees' wages, rent, suppliers, and other creditors, and to meet other day-to-day expenses incurred in operating the businesses. The question to be decided is whether, in these circumstances, petitioner is personally liable under § 6672 of the Internal Revenue Code of 1954, 26 U. S. C. § 6672—which imposes personal liability for taxes on "[a]ny person required to collect, truthfully account

for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof . . ."—for the corporations' unpaid taxes withheld from wages prior to his assumption of control. The Court of Appeals for the Sixth Circuit held that petitioner was personally liable under § 6672 for the unpaid taxes. 552 F. 2d 159 (1977). We granted certiorari.[1] 434 U. S. 817 (1977). We reverse.

## I

The case arose from the filing by the Internal Revenue Service (IRS) of a claim for the taxes in a proceeding instituted by petitioner in July 1969 for a real property arrangement under Chapter XII of the Bankruptcy Act. The facts determined after hearing by the bankruptcy judge, 74–2 USTC ¶ 9719 (ND Ohio 1974), are not challenged. Petitioner purchased and assumed managerial control of the Tas-Tee Catering, Tas-Tee Vending, and Charles Corporations on January 31, 1969. When he bought the stock, petitioner understood, and the purchase agreement reflected, that the corporations had an outstanding obligation for taxes in the amount of $250,000 due for payment on January 31, including withheld employee wage and FICA taxes (hereinafter trust-fund taxes). During the purchase negotiations, the sellers represented to petitioner that balances in the various corporate checking accounts were sufficient to pay these taxes as well as bills due other creditors. Relying on the representation, petitioner, on Saturday, February 1, sent four checks to the IRS in payment of the taxes.

---

[1] In the Court of Appeals, petitioner appealed from a decision of the District Court holding him liable for withholding taxes for the period February 1 to July 15, 1969. The Court of Appeals reversed, 552 F. 2d, at 161–163, and review of that holding was not sought here. Only the decision on the Government's cross-appeal holding petitioner liable for withholding taxes collected prior to January 31 is before us. *Id.*, at 163–165.

On Monday, February 3, petitioner discovered that the accounts were overdrawn and stopped payment on the checks. Thus, at the time that petitioner assumed control, the corporations had no liquid assets, and whatever trust-fund taxes had been collected prior to petitioner's assumption of control had been dissipated.

Petitioner immediately advised the IRS that the corporations had no funds with which to pay the taxes, and solicited guidance concerning how the corporations should proceed. App. 36. There was evidence that IRS officials advised petitioner that they had no objection to his continuing operations so long as current tax obligations were met, and that petitioner agreed to do so and to endeavor to pay the arrearages as soon as possible. Tr. 37–38. The IRS never represented that it would hold petitioner harmless under § 6672 for the back taxes, however.

To continue operations, petitioner deposited personal funds in the corporate acount, and, to obtain inventory, agreed with certain suppliers to pay cash upon delivery. During petitioner's tenure, from January 31 to July 15, 1969, the corporations' gross receipts approximated $130,000 per week for the first few months but declined thereafter. The corporations "established a system of segregating funds for payment of withheld taxes and did, in fact, pay withheld taxes during the period February 1, 1969, to July 15, 1969." App. 30. The bankruptcy judge found, and the IRS concedes, that the $249,212 in taxes paid during this period was approximately sufficient to defray current tax obligations. No taxes owing for periods prior to February 1, were paid, however, and in July 1969 the corporations terminated operations and filed for bankruptcy.

## II

Several provisions of the Internal Revenue Code require third persons to collect taxes from the taxpayer. Among the more important are 26 U. S. C. §§ 3102 (a) and 3402 (a) (1970

ed. and Supp. V) which respectively require deduction from wages paid to employees of the employees' share of FICA taxes, and the withholding tax on wages applicable to individual income taxes. The withheld sums are commonly referred to as "trust fund taxes," reflecting the Code's provision that such withholdings or collections are deemed to be a "special fund in trust for the United States." 26 U. S. C. § 7501 (a). There is no general requirement that the withheld sums be segregated from the employer's general funds, however, or that they be deposited in a separate bank account until required to be paid to the Treasury. Because the Code requires the employer to collect taxes as wages are paid, § 3102 (a), while requiring payment of such taxes only quarterly,[2] the funds accumulated during the quarter can be a tempting source of ready cash to a failing corporation beleaguered by creditors.[3] Once net wages are paid to the employee, the taxes withheld are credited to the employee regardless of whether they are paid by the employer, so that the IRS has recourse only against the employer for their payment.[4]

An employer who fails to pay taxes withheld from its employees' wages is, of course, liable for the taxes which should have been paid, §§ 3102 (b) and 3403. The IRS has several means at its disposal to effect payment of the taxes so withheld.

---

[2] See Treas. Regs. §§ 31.6011 (a)–1 (a) (1) and 31.6011 (a)–4, 26 CFR §§ 31.6011 (a)–1 (a) (1) and 31.6011 (a)–4 (1977), regarding return filing requirements. Treasury Reg. § 31.6151 (a), 26 CFR § 31.6151 (a) (1977), requires that the tax be paid when the return is due for filing. Treasury Reg. § 31.6011 (a)–5, 26 CFR § 31.6011 (a)–5 (1977), provides that monthly returns may be required in lieu of quarterly returns at the direction of the District Director. See also 26 U. S. C. § 7512 (b).

[3] See *United States* v. *Sotelo, post,* at 277–278, n. 10.

[4] See *Moore* v. *United States,* 465 F. 2d 514, 517 (CA5 1972); *Dillard* v. *Patterson,* 326 F. 2d 302, 304 (CA5 1963); *United States Fidelity & Guaranty Co.* v. *United States,* 201 F. 2d 118, 120 (CA10 1952). This at the least is the administrative practice. See Brief for United States 10–11.

244

First, once it has been determined that an employer has been inexcusably delinquent, the IRS, upon giving hand-delivered notice, may require the employer, thereafter, and until further notice, to deposit withheld taxes in a special bank trust account within two banking days after collection, to be retained there until required to be paid to the Treasury at the quarter's end. § 7512. Second, with respect to trust funds past due prior to any such notification, the amount collected or withheld "shall be held to be a special fund in trust for the United States [and] [t]he amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose." 26 U. S. C. § 7501. Thus there is made applicable to employment taxes withheld but not paid the full range of collection methods available for the collection of taxes generally. After assessment, notice, and demand,[5] the IRS may, therefore, create a lien upon the property of the employer, § 6321, and levy, distrain, and sell the employer's property in satisfaction. §§ 6331 to 6344 (1970 ed. and Supp. V).

Third, penalties may be assessed against the delinquent employer. Section 6656 of the Code imposes a penalty of 5% of the underpayment of any tax required to be deposited, and 26 U. S. C. §§ 7202 and 7215 provide criminal penalties respectively for willful failure to "collect or truthfully account for and pay over" trust-fund taxes, and for failure to comply with the requirements of § 7512, discussed *supra*, regarding special accounting requirements upon notice by the Secretary.

Finally, as in this case, the officers or employees of the employer responsible for effectuating the collection and pay-

---

[5] Assessment is made by recording the liability of the taxpayer in the office of the Secretary of the Treasury, 26 U. S. C. § 6203, and notice of the assessment and demand for payment generally are required to be made within 60 days of the assessment. 26 U. S. C. § 6303 (a).

ment of trust-fund taxes who willfully fail to do so are made personally liable to a "penalty" equal to the amount of the delinquent taxes. Section 6672 provides, *inter alia:*

> "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. . . ."

Section 6671 (b) defines "person," for purposes of § 6672, as including "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." Also, § 7202 of the Code,[6] which tracks the wording of § 6672, makes a violation punishable as a felony subject to a fine of $10,000, and imprisonment for 5 years. Thus, an employer-official or other employee responsible for collecting and paying taxes who willfully fails to do so is subject to both a civil penalty equivalent to 100% of the taxes not collected or paid, and to a felony conviction. Only the application to petitioner of the civil penalty provision, § 6672, is at issue in this case.

### III

When the same individual or individuals who caused the delinquency in any tax quarter are also the "responsible per-

---

[6] Section 7202 provides:

"Any person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution."

sons" [7] at the time the Government's efforts to collect from the employer have failed, and it seeks recourse against the "responsible employees," see IRS Policy Statement P–5–60, IRS Manual, MT 1218–56 (Feb. 25, 1976), there is no question that § 6672 is applicable to them. It is the situation that arises when there has been a change of control of the employer enterprise, here corporations, prior to the expiration of a tax quarter, or at a time when a tax delinquency for past quarters already exists that creates the question for our decision. In this case, petitioner assumed control at a time when a delinquency existed for unpaid trust-fund taxes, while the specific funds withheld but not paid had been dissipated by predecessor officers and when the corporations had no liquid assets with which to pay the overdue taxes.

## A

Petitioner concedes that he was subject to personal liability under § 6672 as a person responsible for the collection, accounting, and payment of employment taxes required to be withheld between January 31, 1969, when he assumed control of the corporations, and July 15, 1969, when he resigned. Tr. of Oral Arg. 8. His contention is that he was not, however, a responsible person within § 6672 with respect to taxes withheld prior to his assumption of control and that § 6672 consequently imposed no duty upon him to pay the taxes collected by his predecessors. Petitioner argues that this construction of § 6672 follows necessarily from the statute's limitation of personal liability to "[a]ny person required to collect, truthfully account for *and* pay over any tax imposed by this title," who willfully fails to discharge those responsibilities (emphasis added). He argues that since the obligations are phrased in

---

[7] The cases which have been decided under § 6672 generally refer to the "person required to collect, truthfully account for, and pay over any tax imposed by this title" by the shorthand phrase "responsible person." We use that phrase without necessarily adopting any of the constructions placed upon it in the decisions.

the conjunctive, a person can be subject to the section only if all three duties—(1) to collect, (2) truthfully account for, *and* (3) pay over—were applicable to him with respect to the tax dollars in question. See *McCullough* v. *United States,* 462 F. 2d 588 (CA5 1972). On the other hand, as the Government argues, the language could be construed as describing, in terms of their general responsibilities, the persons potentially liable under the statute, without regard to whether those persons were in a position to perform all of the duties with respect to the specific tax dollars in question. Although neither construction is inconsistent with the language of the statute, we reject petitioner's as inconsistent with its purpose.

Sections 6672 and 7202 were designed to assure compliance by the employer with its obligation to withhold and pay the sums withheld, by subjecting the employer's officials responsible for the employer's decisions regarding withholding and payment to civil and criminal penalties for the employer's delinquency. If § 6672 were given petitioner's construction, the penalties easily could be evaded by changes in officials' responsibilities prior to the expiration of any quarter. Because the duty to *pay over* the tax arises only at the quarter's end, a "responsible person" who willfully failed to *collect* taxes would escape personal liability for that failure simply by resigning his position, and transferring to another the decisionmaking responsibility prior to the quarter's end.[8] Ob-

---

[8] Petitioner argues that his construction of the statute is consistent with imposition of § 6672 liability upon a "responsible person" removed before the end of the quarter, explaining that in such case § 6672 liability would attach because "[w]hile the taxpayer was removed as a responsible officer before the time payment was required *to be made,* he nevertheless came under the *requirement* of making the payment when he collected the taxes." Brief for Petitioner 9 (emphasis in original). "All three elements required to charge the taxpayer with the penalty . . . did in fact converge." *Ibid.* If that is so, we fail to see why all three elements did not "converge" when petitioner assumed control. In both circumstances liability is asserted under the statute as to a person not in a position to fulfill each of the duties with respect to the specific tax dollars in question. More-

versely, a "responsible person" assuming control prior to the quarter's end could, without incurring personal liability under § 6672, willfully dissipate the trust funds collected and segregated by his predecessor.[9]

That this result, obviously at odds with the statute's purpose to assure payment of withheld taxes, was not intended is buttressed by the history of the provision. The predecessor of § 6672, § 1308 (c), Revenue Act of 1918, 40 Stat. 1143, provided, *inter alia:* "Any person who willfully refuses to pay, collect, or truly account for and pay over [taxes enumerated in § 1308 (a)] shall . . . be liable to a penalty of the amount of the tax evaded or not paid, collected, or accounted for and paid over . . . ."[10] The statute remained unchanged in this respect until 1954 when the successor section to § 1308 (c)[11]

---

over, apart from any illogic from which that argument suffers, it is highly dubious that Congress intended the words of the statute to create the almost metaphysical distinction suggested by petitioner's argument between a choate duty to perform all three functions upon one in control at the start of a tax quarter and an inchoate duty as to one assuming control in mid-quarter.

[9] Although petitioner argues that neither § 6672 nor any other provision of the Code imposes liability in this situation, he suggested at oral argument that liability might lie under ordinary trust principles. Tr. of Oral Arg. 14, 20–21.

[10] As introduced in the House, H. R. 12863, 65th Cong., 2d Sess., § 1308 (1918), § 1308 was a re-enactment of existing law. Revenue Act of 1917, ch. 63, § 1004, 40 Stat. 325–326. The Senate Finance Committee completely rewrote the section, adding the major penalty provisions which have since continuously existed in the Code. The Committee Reports do not shed any light on the problem at hand, however. Between 1918 and 1954, the only change in § 1308 (c), other than renumbering in the various Codes, see n. 11, *infra,* was that effected by the Revenue Act of 1924, ch. 234, § 1017 (d), 43 Stat. 344, which changed the word "refuses" in the 1918 Act to "fails," and which in § 1017 (b), the predecessor of Internal Revenue Code of 1954, 26 U. S. C. § 7202, changed the penalty from a misdemeanor to a felony.

[11] Under the 1939 Code, the successor provisions to § 1308 (c) were separately codified with each of the third-party collection taxes to which

was revised to its present form. Both before and after the 1954 revision the "person" potentially liable under the statute was defined in a separate provision, § 1308 (d), succeeded by present § 6671 (b), as, including "an officer or employee of a corporation or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." When, in 1954, Congress added the phrase modifying "person"— "Any person required to collect, truthfully account for, and pay over any tax imposed by this title"—it was not seeking further to describe the class of persons defined in § 6671 (b) upon whom fell the responsibility for collecting taxes, but was attempting to clarify the type of tax to which the penalty section was applicable. Since under the 1954 amendment the penalty would otherwise be applicable to "any tax imposed by this title," the phrase modifying "person" was necessary to insure that the penalty provided by that section would be read as applicable only to failure to pay taxes which *require collection,* that is, third-party taxes, and not failure to pay *"any* tax imposed by this title," which, of course, would include *direct* taxes such as employer FICA and income taxes. As both the House and Senate Committees expressed it, "the application of this penalty is limited only to the collected or withheld taxes which are imposed on some person other than the person who is required to collect, account for and pay over, the tax." [12]  Thus, by adding the

---

they were applicable. 26 U. S. C. § 2557 (b) (4) (1952 ed.) (narcotics); 26 U. S. C. § 2707 (a) (1952 ed.) (firearms); 26 U. S. C. § 1821 (a) (3) (1952 ed.) (documents); 26 U. S. C. § 1718 (c) (1952 ed.) (admissions and dues).

[12] S. Rep. No. 1622, 83d Cong., 2d Sess., 596 (1954); H. R. Rep. No. 1337, 83d Cong., 2d Sess., A420 (1954). The complete text of the Senate Report's discussion of § 6672 is as follows:

"This section is identical with that of the House bill.

"This section is similar to certain sections of existing law which prescribe

phrase modifying "person," Congress was attempting to clarify the type of tax to which the penalty section was applicable, perhaps inartfully, by reference to the duty of the person required to collect them. This view is supported by the fact that the Commissioner of Internal Revenue issued a regulation shortly after the amendment, limiting the application of the § 6672 penalty to third-party taxes. 22 Fed. Reg. 9148 (1957), now codified as Treas. Reg. § 301.6672–1, 26 CFR § 301.6672–1 (1977).

We conclude therefore that the phrase "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title" was meant to limit § 6672 to persons responsible for collection of third-party taxes and not to limit it to those persons in a position to perform all three of the enumerated duties with respect to the tax dollars in question.[13]

We turn then to the Government's contention that petitioner was subject to personal liability under § 6672 when during the period in which he was a responsible person, the corporations generated gross receipts sufficient to pay the back taxes, but used the funds for other purposes.

---

a penalty equal to the total amount of the tax evaded, not collected, or not accounted for and paid over, in the case of willful failure to collect, or to truthfully account for and pay over, any tax imposed by this title, or willful attempt in any manner to evade or defeat such tax. *However, the application of this penalty is limited only to the collected or withheld taxes which are imposed on some person other than the person who is required to collect, account for and pay over, the tax.* Under existing law this penalty is not applicable in any case in which the additions to the tax in the case of delinquency or fraud are applicable. Under this section the additions to the tax provided by section 6653, relating to negligence or fraud, shall not be applied for any offense to which this section is applicable." (Emphasis added.)

The House Report is nearly identical.

[13] See *Rubin* v. *United States,* 380 F. Supp. 1176, 1179 (WD Pa. 1974), aff'd, 515 F. 2d 507 (CA3 1975); *Louisville Credit Men's Assn., Inc.* v. *United States,* 73–2 USTC ¶ 9740 (ED Ky. 1970); *Tiffany* v. *United States,* 228 F. Supp. 700 (NJ 1963).

## B

Although at the time petitioner became a responsible person the trust-fund taxes had been dissipated and the corporations had no liquid assets, the Government contends that § 6672 imposed civil liability upon petitioner because sums received from sales in carrying on the businesses after January 31, 1969, were impressed with a trust in favor of the United States for the satisfaction of overdue employment taxes, and petitioner's willful use of those funds to pay creditors other than the United States, violated the obligation to "pay over" imposed by § 6672. The Government does not argue that the statute requires a "responsible person" to liquidate corporate assets to pay the back taxes upon assuming control, however; it argues only that a trust was impressed on all cash received by the corporations. Tr. of Oral Arg. 26, 28–29, 30–31, 32. We think that that construction of § 6672 would not advance the statute's purpose and, moreover, is inconsistent with the context and legislative history of the provision and its relation to the Code's priority rule applicable to collection of back taxes.

### (1)

The Government argues that its construction of the statute is necessary to effectuate the congressional purpose to assure collection and payment of taxes. Although that construction might in this case garner tax dollars otherwise uncollectible, its long-term effect arguably would more likely frustrate than aid the IRS's collection efforts.

At the time petitioner assumed control, the corporations owed back taxes, were overdue on their supplier accounts, and had no cash. To the extent that the corporations had assets unencumbered by liens superior to a tax lien, the IRS could satisfy its claim by levy and sale. But as will often be the case, the corporations here apparently did not have such assets. The

Government admits that in such circumstances, the IRS's practice is to be "flexible," Tr. of Oral Arg. 27, 28, 32, 48, and does not insist that the corporation discontinue operations, thereby substituting for certain loss at least the potential of recovering back taxes if the corporation makes a financial recovery. It argues nevertheless that the "responsible person" renders himself personally liable to the § 6672 penalty by using gross receipts to purchase inventory or pay wages, or even by using personal funds for those purposes,[14] so long as any third-party employment tax bill remains unpaid.[15]

Thus, although it is in the IRS's interest to encourage the responsible person to continue operation with the hope of receiving payment of the back taxes, if the attempt fails and the taxes remain unpaid, the IRS insists that the § 6672 personal-liability penalty attached upon payment of the first dollar to a supplier. The practical effect of that construction of the statute would be that a well-counseled person contemplating

---

[14] See, e. g., Sorenson v. United States, 521 F. 2d 325, 327 (CA9 1975). The court reasoned that payment of creditors from personal funds is a willful failure to pay because when personal funds are used for corporate purposes they become corporate funds, and any payment of them to creditors other than the United States is an unlawful preference. That reasoning was unnecessary to the result reached in the case, however. The responsible person there had used personal funds to pay net wages to employees. The finding of liability therefore could have been founded on the failure to collect and withhold taxes as wages were paid. Cf. 26 U. S. C. § 3505.

[15] Indeed, the IRS's policy is to augment the personal liability of the responsible person by earmarking the taxes he collects and pays from current wages first to the past due direct corporate employment tax, that is, the employer's share of FICA taxes, thus rendering him liable for trust-fund taxes he thought were paid, but which the Government does not credit as paid. This policy prevails unless the Government is notified in writing that the taxes are to be credited solely to current employment taxes. When payment results from enforced collection methods, however, the IRS nevertheless refuses to honor the designation. IRS Policy Statement P–5–60, IRS Manual, MT 1218–56 (Feb. 25, 1976).

assuming control of a financially beleaguered corporation owing back employment taxes would recognize that he could do so without incurring personal civil and criminal penalties only if there were available sufficient borrowed or personal funds fully to pay all back employment taxes before doing *any* business. If that course is unattractive or unavailable ,o the corporation, the Government will be remitted to its claim in bankruptcy. When an immediate filing for bankruptcy means a total loss, the Government understandably, as it did here, does not discourage the corporation from continuing to operate so long as current taxes are paid. As soon as the corporation embarks upon that course, however, the "responsible person" is potentially liable to heavy civil and criminal penalties not for doing anything which compromised the Government's collection efforts, but for doing what the Government regards as maximizing its chances for recovery. As construed by the Government, § 6672 would merely discourage changes of ownership and management of financially troubled corporations and the infusion of equity or debt funding which might accompany it without encouraging employer compliance with tax obligations or facilitating collection of back taxes. Thus, recovery of employer taxes would likely be limited to the situation in which the prospective purchaser or management official is ignorant of § 6672.[16]

## (2)

As noted in the previous section, § 6672 as construed by the Government would, in effect, make the responsible person

---

[16] There might be cases in which a person would undertake to continue operations knowing of the risk of personal liability, but confident that the prospects for profitability make that risk acceptable. The fact that such risk-taking might occur in marginal cases would not, however, justify a construction of the statute as requiring the risk when to impose it does not further the overall deterrent and tax collection goals of the statute.

assuming control of a business a guarantor for payment of the delinquent taxes simply by undertaking to continue operation of the business. That construction is precluded by the history and context of § 6672 and cognate provisions of the Code.

Section 6672 cannot be read as imposing upon the responsible person an absolute duty to "pay over" amounts which should have been collected and withheld. The fact that the provision imposes a "penalty" and is violated only by a "willful failure" is itself strong evidence that it was not intended to impose liability without personal fault. Congress, moreover, has not made corporate officers personally liable for the corporation's tax obligations generally, and § 6672 therefore should be construed in a way which respects that policy choice. The Government's concession—that § 6672 does not impose a duty on the responsible officer to use personal funds or even to liquidate corporate assets to satisfy the tax obligations—recognizes that the "pay over" requirement does not impose an absolute duty on the responsible person to pay back taxes.

Recognizing that the statute cannot be construed to impose liability without fault, the Government characterizes petitioner's use of gross receipts for payment of operating expenses as a breach of trust, arguing that a trust was impressed on all after-acquired cash. Nothing whatever in § 6672 or its legislative history suggests that the effect of the requirement to "pay over" was to impress a trust on the corporation's after-acquired cash, however. Moreover, the history of a related section, 26 U. S. C. § 7501,[17] makes clear that it was not.

[17] Section 7501 provides:

"(a) General rule.

"Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to

Section 7501 of the Code provides, *inter alia*, that the "amount of tax . . . collected or withheld shall be held to be a special fund in trust for the United States [which] shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose." This section was enacted in 1934. Act of May 10, 1934, ch. 277, § 607, 48 Stat. 768, 26 U. S. C. § 3661 (1952 ed.). The provision was added to H. R. 7835, 73d Cong., 2d Sess., by the Senate Finance Committee, which explained:

> "Under existing law the liability of the person collecting and withholding the taxes to pay over the amount is merely a debt, and he cannot be treated as a trustee or proceeded against by distraint. Section [607] of the bill as reported impresses the amount of taxes withheld or collected with a trust and makes applicable for the enforcement of the Government's claim the administrative provisions for assessment and collection of taxes." S. Rep. No. 558, 73d Cong., 2d Sess., 53 (1934).

Since the very reason for adding § 7501 was, as the Senate Report states, that "the liability of the person collecting and withholding the taxes . . . is *merely a debt*" (emphasis added), § 6672, whose predecessor section was enacted in 1919 while the *debt* concept prevailed, hardly could have been intended to impose a *trust* on after-acquired cash.

We further reject the argument that § 7501, whose trust concept may be viewed as having modified the duty imposed under § 6672,[18] can be construed as establishing a fiduciary

---

the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose.

"(b) Penalties.

"For penalties applicable to violations of this section, see sections 6672 and 7202."

[18] Although the Government primarily relies upon § 6672, it suggests that liability would attach under § 7501, as well, for a breach of the trust

obligation to pay over after-acquired cash unrelated to the withholding taxes. The language of § 7501 limits the trust to "the amount of the taxes *withheld* or *collected.*" (Emphasis added.) Comparing that language with § 6672, which imposes liability for a willful failure to *collect* as well as failure to pay over, makes clear that under § 7501 there must be a nexus between the funds collected and the trust created. That construction is consistent with the accepted principle of trust law requiring tracing of misappropriated trust funds into the trustee's estate in order for an impressed trust to arise. See D. Dobbs, Handbook on the Law of Remedies 424–425 (1973). Finally, for the reasons discussed in the next section, a construction of § 7501 or § 6672 as imposing a trust on all after-acquired corporate funds without regard to the interests of others in those funds would conflict with the priority rules applicable to the collection of back taxes.

## (3)

We developed in Part II, *supra*, that the Code affords the IRS several means to collect back taxes, including levy, distraint, and sale. But the IRS is not given the power to levy on property in the hands of the taxpayer beyond the extent of the taxpayer's interest in the property,[19] and the Code

---

established by that section. Brief for United States 18 n. 6. Petitioner, on the other hand, argues that § 7501 is applicable only to employers, since the applicable definitional section, 26 U. S. C. § 7701 (a)(1), defines "person" as "construed to mean and include an individual, a trust, estate, partnership, association, company or corporation," while that applicable to § 6672 defines "person" as including "an officer or employee of a corporation . . . ." 26 U. S. C. § 6671 (b). Since we do not decide whether § 7501 establishes a basis of liability applicable to responsible persons independent of § 6672, we need not address these contentions. We decide only that § 7501 properly may be regarded as informing the scope of the duty imposed by § 6672.

[19] Section 6321 provides that the lien shall be applicable to "all property and rights to the property, whether real or personal, *belonging* to such per-

specifically subordinates tax liens to the interests of certain others in the property, generally including those with a perfected security interest in the property.[20]  For example, the Code and established decisional principles subordinate the tax lien to perfected security interests arising before the filing of the tax lien,[21] to certain perfected security interests in certain collateral, including inventory, arising after the tax lien filing when pursuant to a security agreement entered into before the filing,[22] and to collateral which is the subject of a purchase-

son." (Emphasis added.)  We have held that the extent of the tax debtor's interest in the property is determined by state law, and that the lien cannot attach when the debtor has no interest.  *Aquilino* v. *United States,* 363 U. S. 509 (1960); *United States* v. *Durham Lumber Co.,* 363 U. S. 522 (1960).

[20] The basic priority rules for tax liens are established by 26 U. S. C. § 6323, which, in addition to subordinating the federal tax lien to certain perfected security interests, makes superior to the lien, interests of persons who, without actual knowledge of the lien, acquire interests in personal property purchased from retail dealers in the ordinary course of trade, personal property (less than $250) purchased in casual sales, securities, motor vehicles, and real property by virtue of a lien for certain local real property and special assessment taxes, or for mechanic's liens.  §§ 6323 (b)(1) to (7).

[21] Section 6323 (a) provides:

"The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary."

[22] Section 6323 (c) provides that a tax lien is subordinate to a security interest which came into existence *after* the tax lien filing but which is a "commercial transactions financing agreement . . . protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation." §§ 6323 (c)(1)(A)(i) and (c)(1)(B).  (A commercial transactions financing agreement includes accounts receivable and inventory, § 6323 (c)(2)(C).)

The local law applicable is, in 49 States and the District of Columbia, the Uniform Commercial Code (UCC); and 26 U. S. C. § 6323, as amended by the Federal Tax Lien Act of 1966, Pub. L. No. 89–719, § 101, 80 Stat. 1125, was in large part adopted in order to "conform the lien pro-

money mortgage regardless of whether the agreement was entered into before or after filing of the tax lien.[23] As a consequence, secured parties often will have interests in certain proceeds superior to the tax lien, and it is unlikely, moreover, that corporations in the position of those involved here could continue in operation without making some payments to se-

---

visions of the internal revenue laws to the concepts developed in [the] Uniform Commercial Code." H. R. Rep. No. 1884, 89th Cong., 2d Sess., 1 (1966).

Under the UCC, a perfected security interest is superior to a judgment lien creditor's claim in the property, see UCC §§ 9–301, 9–312. Perfection of a security interest in inventory or accounts receivable occurs only when a financing statement is filed, UCC § 9–302, and when it has attached. UCC § 9–303 (1). Attachment requires an agreement, value given by the secured party, and that the debtor have rights in the collateral. UCC § 9–204. Thus when a security agreement exists and filing has occurred prior to the filing of a tax lien to secure advances made after the tax filing, perfection is, at the least, achieved when the secured party makes the advance. When that occurs after the tax lien has been filed, § 6323 (d) protects the secured party from the federal tax lien if the advance is made not later than 45 days after the filing of the tax lien or upon receipt of actual notice of the tax lien filing, whichever is sooner. For a more detailed explanation of these provisions see Coogan, The Effect of the Federal Tax Lien Act of 1966 Upon Security Interests Created Under the Uniform Commercial Code, 81 Harv. L. Rev. 1369, 1403–1413 (1968).

[23] Decisional law has long established that a purchase-money mortgagee's interest in the mortgaged property is superior to antecedent liens prior in time, see United States v. New Orleans R. Co., 12 Wall. 362 (1871), and, therefore, a federal tax lien is subordinate to a purchase-money mortgagee's interest notwithstanding that the agreement is made and the security interest arises after notice of the tax lien. The purchase-money mortgage priority is based upon recognition that the mortgagee's interest merely reflects his contribution of property to the taxpayer's estate and therefore does not prejudice creditors who are prior in time.

In enacting the Federal Tax Lien Act of 1966, Congress intended to preserve this priority, H. R. Rep. No. 1884, 89th Cong., 2d Sess., 4 (1966), and the IRS has since formally accepted that position. Rev. Rul. 68–57, 68–1 Cum. Bull. 553; see also IRS General Counsel's Op. No. 13–60, 7 CCH 1961 Stand. Fed. Tax Rep. ¶ 6307 (1960).

cured creditors under the terms of security agreements. Those payments may well take the form of cash or accounts receivable, which like other property may be subject to a security interest, when, for example, the security agreement covers the proceeds of inventory the purchase of which is financed by the secured party, or the security agreement requires the debtor to make payments under a purchase-money mortgage by assigning accounts receivable which are the proceeds of inventory financed by the mortgage.[24] Thus, although the IRS is powerless to attach assets in which a secured party has a superior interest, it would impose a penalty under § 6672 if the responsible person fails to divert the secured party's proceeds to the Treasury without regard to whether the secured party's interests are superior to those of the Government. Surely Congress did not intend § 6672 to hammer the responsible person with the threat of heavy civil and criminal penalties to pay over proceeds in which the Code does not assert a priority interest.

## IV

We hold that a "responsible person" under § 6672 may violate the "pay over" requirement of that statute by willfully failing to pay over trust funds collected prior to his accession to control when at the time he assumed control the corporation has funds impressed with a trust under § 7501, but that § 7501 does not impress a trust on after-acquired funds, and that the responsible person consequently does not violate § 6672 by willfully using employer funds for purposes other than satisfaction of the trust-fund tax claims of the United States when at the time he assumed control there were no

---

[24] A security interest in accounts may be perfected by filing, UCC § 9–302, while a security interest in cash, except as hereafter noted, can be perfected only by possession. UCC § 9–304 (1). When the secured party perfects a security interest in inventory and proceeds, the security interest in accounts which are proceeds is continuously perfected. UCC § 9–306 (3) (a). The identifiable cash proceeds are also perfected, but only for a 10-day period. UCC § 9–306 (3).

funds with which to satisfy the tax obligation and the funds thereafter generated are not directly traceable to collected taxes referred to by that statute.[25]   That portion of the judgment of the Court of Appeals on the Government's cross-appeal holding petitioner liable under § 6672 for wage withholding and FICA taxes required to be collected from employees' wages prior to January 31, 1969, is

*Reversed.*

MR. JUSTICE REHNQUIST, concurring.

I join the Court's opinion and write separately only to emphasize that part of it which I think is critical to the disposition of this case.   Both petitioner and the Government have available to them arguments, based upon two different clauses of § 6672, which, if accepted, would enable them to prevail on the literal language of the clause alone without further consideration of other factors.   Petitioner argues with considerable cogency that the portion of § 6672 phrased *conjunctively, ante,* at 245, fails to include him within the class of persons liable for the penalty imposed by that section.   If his argument were to be accepted, that would be the end of the case.   I agree with the Court that his argument should be rejected, because its appeal based on the literal language of the clause is more than outweighed by the fact that the clause was added in 1954 very probably to narrow the class of

---

[25] The basis for the dissent's contrary construction is that "it is difficult to comprehend why the United States should be precluded from looking to what is probably its best source, the flow of funds coming into business entities, merely because a change in ownership or management has occurred subsequent to the time when the amounts in question were withheld from employees." *Post,* at 262.   We agree that the *employer's* liability is unaffected by changes in management, and the Government may, under various Code provisions, enforce its lien against any employer asset including the flow of incoming cash.   But that does not answer the question before us which is whether § 6672 imposes a penalty on a responsible person for failing to pay over withheld taxes when those taxes had been dissipated before he acceded to control.

persons who might be subject to the predecessor penalty provisions which were phrased in the *disjunctive*.

Having won this point the Government could then rely on the disjunctive literal language of the statute and its predecessors and argue that petitioner, a responsible corporate official at some point in time, is liable for all taxes which he failed to collect or, as is the case here, pay over. But the Government does not advance this argument, realizing, no doubt, that it is foreclosed largely for the reasons given by the Court in Part III–B (2) of its opinion. I fully agree with the Court's conclusion in this respect, stressing in addition only the fact that both the language and history of § 6672 make it perfectly clear that liability for this penalty cannot be imposed in the absence of a willful failure and the word "willful," used as it is in this context in conjunction with the word "penalty," requires some action that tends to impede collection of the corporation's trust-fund taxes before liability can attach. For example, even the Government concedes that a responsible officer need not use personal funds or liquidate corporate assets to satisfy past tax obligations which have arisen under the withholding provisions before the official assumed responsibility. *Ante,* at 254. It should be apparent from the Court's opinion, however, that this notion of "fault" may have little to do with other sections of the Tax Code. Its importation into § 6672 is compelled by the normal canons of statutory construction, but those canons may speak differently as to the meaning of the word "willful" or the concept of "fault" in other sections of the Code. Indeed, the interpretation of § 6672 we adopt today is limited by the very factors which caused us to adopt it.

MR. JUSTICE WHITE, with whom THE CHIEF JUSTICE and MR. JUSTICE BLACKMUN join, dissenting in part.

The Court recognizes, as even petitioner concedes, that 26 U. S. C. § 6672 makes those individuals who are "required to

collect, truthfully account for, and pay over any tax imposed by this title" ("responsible persons") personally liable for the failure to use available corporate funds to pay to the IRS amounts equal to sums withheld from employees during those periods in which they were "responsible persons." It also holds, and I agree, that the obligations of a "responsible person" under § 6672 are not limited to liabilities incurred during the period during which he occupied such a position but that he "violate[s] the 'pay over' requirement of that statute by willfully failing to pay over trust funds collected prior to his accession to control when at the time he assumed control the corporation has funds impressed with a trust under § 7501 . . . ." *Ante,* at 259. From this conclusion it would seem to follow automatically that one who becomes a "responsible person" subsequent to the collection of withholding tax payments from employees is, for purposes of § 6672, in the same shoes as one who was a "responsible person" at the time of collection. After all, as the Court recognizes, the purpose of § 6672 is to assure the collection and payment of taxes, and it is difficult to comprehend why the United States should be precluded from looking to what is probably its best source, the flow of funds coming into business entities, merely because a change in ownership or management has occurred subsequent to the time when the amounts in question were withheld from employees. Moreover, there is absolutely nothing in the language or legislative history of § 6672 which distinguishes between the obligations of "responsible persons" on the basis of when they assumed such a position. Indeed, this is the thrust of Part III–A of the Court's opinion. Inexplicably, however, and in disregard of these controlling principles, the Court holds that a "responsible person" does not violate § 6672 by willfully using funds acquired by the corporation after his accession for purposes other than the satisfaction of withholding tax claims of the United States arising from duties imposed by law prior to his accession.

I

Although the Court concedes that the construction of § 6672 adopted by the Court of Appeals in this case and urged by the United States "might . . . garner tax dollars otherwise uncollectible" in cases such as this, *ante,* at 251, it rejects this construction in favor of one which permits corporations to escape their tax obligations through change of ownership or management primarily because of its belief that the free enterprise system is best promoted by the use of tax funds to subsidize the takeover of financially beleaguered companies. The majority deems it desirable to encourage "changes of ownership and management of financially troubled corporations and the infusion of equity or debt funding," *ante,* at 253, and construes the statute in a manner it believes to be consistent with this goal. Apparently, in the Court's view, tax funds are better used to subsidize such takeovers than to meet other social needs for which Congress has specifically appropriated tax funds. But I believe that the Court exceeds its mandate by construing the statute so as to conform to its conclusions concerning the best use of tax dollars collected from American employees. Section 6672 is not an appropriations statute or even a law, like the bankruptcy statute, designed to accomplish substantive ends. The statute lends no support to the Court's conclusion that an insolvent corporation with unpaid withholding taxes should be permitted to continue its business under the aegis of a successor officer, even at the cost of the United States' tax claim. It is, purely and simply, a tax collection statute which is designed to do nothing more than assure that taxes withheld from employees find their way to the United States to be spent for those purposes defined by Congress. In my view, it is error to construe the statute in a way which permits the diversion of these funds from the uses determined by Congress to be in the public interest to ends which in the Court's view would better promote the general welfare.

The Court relies upon the fact that the IRS often applies a flexible approach and does not always insist that financially troubled concerns use all available funds to pay back taxes if such payment would require the corporation to discontinue operations. For present purposes, I assume that the IRS may properly so exercise its discretion and may, where it deems it appropriate, even waive any resort to § 6672 if the company should ultimately fail. What this establishes, however, is that the Court's construction of § 6672 is totally unnecessary even given its perception that a rigid application of the statute to successor employers would in the long run damage the economy and hinder IRS collection efforts. It is one thing to conclude that there are some circumstances in which the IRS might decide that the rigid application of § 6672 is not in its own interests but quite another matter to prevent the IRS from using this valuable collection tool in connection with successor employers and managers where it is convinced that its application will effectuate the collection of taxes.

Moreover, it is far from clear that permitting employers to use funds acquired subsequent to their assumption of control for purposes other than the satisfaction of the withholding tax claims of the United States will serve primarily as an aid to financially troubled concerns rather than as an invitation to defraud the Treasury. The Court holds that a person who assumes control must satisfy the business' pre-existing trust-fund tax obligations if the concern has funds available at the time he assumes control. Apparently, neither it nor the IRS would require the sale of the business' assets in order to meet such obligations. It is clear, however, that there will be a great number of companies which do not have cash available at the time of a change in ownership and management but are nevertheless viable, ongoing enterprises not in need of Government subsidization. Furthermore, any businessman with a minimum of acumen could in most circumstances make sure that the financial affairs of the company are so arranged

that there are no uncommitted funds available at the moment of his accession to control. Finally, there can be little doubt that the Court's ruling today will result in changes in management and ownership which are in fact nothing but subterfuges to avoid using the company's funds to pay outstanding trust-fund tax obligations. The investors in any corporation seriously in arrears will also have a strong incentive to arrange changes of management, whether sham or real, in order to permit funds acquired by the corporation to be used for purposes other than satisfying its tax obligations without exposing its managers to personal liability. In addition, changes of ownership, often more formal than real, will frequently be arranged for no purpose other than to permit the concern to use future funds without regard to its pre-existing tax obligations.

## II

The Court next makes the remarkable suggestion that § 6672 cannot be read as imposing an absolute duty upon "responsible persons" to use after-acquired funds to pay over amounts which should have been withheld because to do so would be to impose liability without personal fault which, according to the Court, is precluded by the statutory requirement of a "willful failure." As the concurring opinion of Mr. Justice Rehnquist suggests, the term "willful" in our jurisprudence, particularly in connection with tax matters, normally connotes nothing more than a conscious act or omission which violates a known legal duty. In this case, there can be no doubt that petitioner acted willfully because with full knowledge that the corporations in question had outstanding tax obligations he chose to apply gross receipts received subsequent to his purchase to purposes other than payment of these taxes. It may be that the Court believes that the requirement of a "willful failure" is satisfied only by a showing of conduct which is immoral in some undefined sense. This view, however, is not only unsupported by evidence of legisla-

tive intent but would also prove far too much because even in instances where there is continuity of ownership and, under the Court's view, § 6672 is fully applicable, it will often be the case that "responsible persons" are not morally at fault for the failure to pay over in a timely fashion.

Ultimately, the Court is reduced to arguing that nothing in the legislative history of § 6672 indicates that the statute requires "responsible persons" to pay over after-acquired cash to meet outstanding tax obligations. *Ante,* at 254. I would have supposed that the burden of proof for a statutory construction as extraordinary as that adopted by the Court today is at the very least on its proponents. All that the Court is able to offer, however, is a brief excerpt from the legislative history of an entirely separate statute enacted some 15 years after the predecessor of § 6672 which, with all respect, has nothing to do with the question to be decided.

### III

Finally, the Court purports to find support for its construction of § 6672 from the fact that priority rules applicable to the collection of back taxes in some cases subordinate tax liens to certain other interests in the property. Although this discussion may be of some educational value, it has absolutely nothing to do with the case at hand or the proper construction of § 6672. In the first place, as petitioner conceded at oral argument, the funds which came into his corporations subsequent to his assumption of control were unencumbered by liens. Tr. of Oral Arg. 4-5. Moreover, the conclusion which the Court draws from its exploration of priority rules for tax liens that "Congress did not intend § 6672 to hammer the responsible person with the threat of heavy civil and criminal penalties to pay over proceeds in which the Code does not assert a priority interest," *ante,* at 259, again proves far too much. If the mere possibility that others might have interests superior to a tax lien in proceeds which should under

§ 6672 be paid over to the United States is sufficient to render the statute inapplicable despite the fact that the funds in question are unencumbered, the section, for all practical purposes, has been judicially deleted from the United States Code. Even where there is no change in "responsible persons" or there are corporate funds available to a successor to make back payments of trust-fund tax claims, situations in which the Court would apply § 6672, there will be many occasions in which a tax lien would not have priority over all other hypothetical interests in funds which must be paid over to the United States under the statute. The fact is, of course, as the Court recognizes earlier in its opinion, *ante*, at 243–245, that the tax lien is merely one of several remedies which the IRS has at its disposal to effect the collection of taxes withheld by employers from employees and § 6672 was clearly not designed to be superfluous, but rather independent of and a supplement to other means of collecting trust-fund taxes from employers.

Because I believe that the Court has, without justification, created yet another means of impeding the collection of taxes for purposes designated by Congress, I dissent from Parts III–B and IV of the Court's opinion.