Howard R. **WILKINSON**

v.

The **UNITED STATES.**

No. 547–79T.

United States Claims Court.

July 19, 1983.

Michael D. Gingras, Jackson, Mich., for plaintiff. Corley & Gingras, Jackson, Mich., of counsel.

Kevin B. Shea, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., for defendant. Theodore D. Peyser and Robert S. Watkins, Washington, D.C., of counsel.

## OPINION

HARKINS, Judge.

Plaintiff, Howard R. Wilkinson, seeks recovery of $300, a token payment in partial satisfaction of a 100 percent penalty assessment by the Commissioner of Internal Revenue against plaintiff as a responsible corporate officer who willfully failed to pay

over income taxes and Federal Insurance Contribution Act (FICA) taxes (payroll taxes) withheld from the wages of employees of Super Slide East, Inc. for the last three quarters of 1968. The total penalty assessment, on December 10, 1971, was $52,344.78, subsequent credits and the $300 partial payment reduced the balance to $46,146.08. Defendant has counterclaimed for this balance, plus interest.

Plaintiff is not entitled to recover. Judgment will be entered for defendant on its counterclaim, and the petition (now complaint) will be dismissed.

## FACTS

The corporation involved, Super Slide East, Inc., (Super Slide) was organized in 1967 to produce and install large sliding boards used in amusement parks and other recreational areas. Its sales area covered the United States east of the Mississippi River and, after June 1968, its offices were in the Lamar Towers, Houston, Texas. Fifty percent of the corporate stock of Super Slide was owned by Glennis Wilkinson, plaintiff's wife; and the other 50 percent by Neil Woodington and his wife, Faith T. Woodington. Neil Woodington was general manager of Super Slide until August 24, 1968. As general manager, he was in charge of the business and was responsible for all corporate activities other than sales.

Quarterly employment tax returns (Form No. 941) of Super Slide for the last three quarters of 1968 were not filed until February 12, 1969, and taxes for these three quarters have never been paid. Unpaid withholding and FICA taxes for the 2nd, 3rd, and 4th quarters of 1968 were $19,144.48, $22,626.94, and $10,573.36, respectively.

Monthly notices from the Internal Revenue Service (IRS) concerning the failure to deposit taxes for 1968 2nd quarter were sent to Super Slide beginning in June 1968. The filing date for the tax return itself for 1968 2nd quarter was July 31, 1968.

Super Slide had funds available to pay 2nd quarter taxes on July 31, 1968. On July 15, 1968, Super Slide had $45,173.81 in an account at the Commercial State Bank. On August 31, 1968, Super Slide had accounts receivable of $108,879.82 and total current assets of $402,294.62. Super Slide's accounts receivable consisted primarily of amounts due from previously consummated sales.

Super Slide East did not prosper. By July 1968, its financial difficulties were apparent, no slides were sold after September 1968, and by the end of December 1968 its lessor had locked it out of the offices in the Lamar Towers, Houston, Texas.

Howard R. Wilkinson, plaintiff, was an officer of Super Slide from the time it was incorporated, and was an employee after January 1968. On September 21, 1967, he was elected assistant vice president. On May 3, 1968, he was elected vice president and given authority to handle the day-to-day transactions of the corporation. In a major reorganization of Super Slide, on August 24, 1968, he was elected to the board of directors, and as president, he was given effective day-to-day operational control of Super Slide and responsibility for its financial affairs.

During the period May 3-August 24, 1968, as a vice president of Super Slide, plaintiff was in charge of sales and most of his time was engaged in traveling throughout the eastern part of the United States. As vice president, he was authorized to sign contracts with prospective buyers while in the field, and he was authorized to borrow money for and on behalf of Super Slide. He was not authorized to sign checks on behalf of the corporation. Until mid-July 1968, he was in the Houston office on the average of 3 or 4 days a month. After July 16, 1968, dissatisfaction of Super Slide's suppliers and creditors was such that plaintiff worked in the Houston office at least 3 days per week in the effort to correct the deteriorating financial condition.

During meetings in July, officers and employees of Super Slide discussed payroll taxes and were aware that the 2nd quarter taxes were due. Plaintiff attended some of

the July meetings and learned that there was a tax problem.

After August 24, 1968, as president, plaintiff was authorized to write checks on the corporate bank accounts, and he was the final authority with respect to retention of employees, setting salaries, and prices for the product. Plaintiff had final decision as to which creditors would be paid, when and how much they would be paid, and decisions on which jobs Super Slide would take.

Super Slide's treasurer, after August 24, 1968, was not authorized to pay creditors without plaintiff's express approval. The treasurer did not have authority to file tax returns or to pay taxes without plaintiff's prior approval. When plaintiff was out of town, Super Slide's employees could sign checks for Super Slide only after plaintiff had given his approval by telephone.

After August 24, 1968, plaintiff was in the Houston office of Super Slide every day for the following 2 weeks. Thereafter, plaintiff divided his time so that alternate days were spent in the field or in the Houston office.

After August 24, 1968, Super Slide's treasurer met with plaintiff two or three times each week concerning its financial problems, and the payroll tax situation was discussed at these meetings. The status of Super Slide's payroll taxes was discussed by the treasurer at the first meeting. The treasurer prepared a quarterly report Form 941 for the 1968 2nd quarter and brought it to the meetings with plaintiff, and plaintiff was told the amounts owed. Plaintiff refused to allow the report to be filed or the taxes to be paid.

Plaintiff's secretary testified that in August 1968 informal discussions of Super Slide's financial problems were held in plaintiff's office. From the first of such meetings, the discussions included the possibility that a tax problem existed and that the return had not been filed.

As president, plaintiff signed checks and authorized the signature of checks made out to other creditors in amounts more than sufficient to have paid Super Slide's payroll tax liability. Plaintiff signed at least 225 checks, for a total of $107,460.06, on corporate accounts during the period from September 1968 through January 1969.

During the period August 31 through December 31, 1968, the following amounts were paid to third parties (other than the Government) from two accounts maintained by Super Slide with First City National Bank of Houston:

| Date | Amount | No. of Checks |
|---|---|---|
| 8/31/68 – 9/30/68 | $ 93,254.90 | 339 |
| 10/01/68 – 10/31/68 | 203,126.25 | 651 |
| 11/01/68 – 11/29/68 | 95,083.35 | 389 |
| 11/30/68 – 12/31/68 | 115,552.69 | 279 |

On or after August 24, 1968, but before September 1, 1968, at least $49,376.16 was paid to third parties from the account of Super Slide with Commercial State Bank. Although none of these checks were signed by plaintiff, he authorized their payment. In September 1968, $44,588.33 was paid in 62 checks to third parties from this account.

An agreement dated May 1, 1968, by the stockholders of Super Slide, provided plaintiff was to be paid $120,000. This amount included costs of $60,000 to develop the original Super Slide project, and $60,000 for the assignment of franchise and territorial rights and for services performed by plaintiff as assistant vice president and sales manager to April 30, 1968. At least all but $7,851.50 of the $120,000 was paid to plaintiff by Super Slide during the three quarters in issue.

During the last three quarters of 1968 and January 1969, Super Slide made payments to plaintiff in 33 transactions. These transactions included: a $21,000 payment on October 3, 1968; a $7,200 payment on December 6, 1968; a $2,848.68 payment on January 15, 1969; and three transactions of $500 each on August 15, 1968.

Plaintiff did not communicate with the IRS with respect to Super Slide's payroll tax situation until October 1968. At that time plaintiff voluntarily visited the IRS office in Houston and met with IRS agent Donald Craft, who explained to plaintiff the deposit and filing requirements in the Internal Revenue Code (IRC), and the 100

percent penalty provisions relative to payroll taxes.

In October 1968, when the IRS meetings took place, Super Slide's Form 941 for 1968 2nd quarter had been prepared by, but not filed by, the corporation's certified public accountant who has been retained by Neil Woodington. This Form 941 was located in Madison, Wisconsin. A Form 941 for 1968 2nd quarter also had been prepared by Super Slide's new treasurer after the August 24, 1968, reorganization. Financial records were available in Houston to the treasurer from which tax report Form 941 could have been prepared for the 1968 3rd quarter.

Prior to October 31, 1968, another employee of Super Slide began preparation of the tax report Form 941 for the 2nd and 3rd quarters of 1968. After December 15, 1968, Super Slide was locked out of its Houston office. At plaintiff's request, IRS agent Craft called the landlord and obtained permission for a Super Slide employee to enter the leasehold to obtain documentation that might assist in preparation of Form 941 for 1968 4th quarter taxes.

## DISPOSITION

The objectives of the provisions of the Internal Revenue Code relative to withholding of employee income and FICA taxes, and the law applicable thereto, are well defined.[1] An employer such as Super Slide is required to withhold income taxes and the employee's share of FICA taxes from its employees' wages. IRC § 7501(a) requires such taxes so collected or withheld to be held to be a special fund in trust for the United States. Treasury regulations require taxes so withheld to be turned over to the IRS at least by the end of each quarter. When the amounts withheld from employees' wages are not turned over to the Government, however, by either the employer or by appropriate corporate officers, taxes in the trust fund are lost to the Government. The system of withholding provided by the IRC fully protects employees by provisions which credit employees for the amounts of FICA and income taxes withheld from wages, regardless of whether the employer turns the funds over to the Government.

Stringent protective devices insure collection of payroll taxes. Liability to pay over the taxes arises at the time the sums are withheld from the employee's wages, rather than at a later date when the employer's tax return is filed. If the withheld taxes cannot be collected from the employer corporation, the taxes may be collected in the form of a 100 percent penalty from officers of the corporation responsible for the failure to pay it over.[2] The 100 percent penalty primarily is a collection device; it is collected from a responsible officer only if the tax cannot be collected from the corporation itself. The 100 percent penalty is imposed upon each responsible officer in an amount equal to the trust funds due to the Government but expended to pay other creditors.

The basic purpose of these provisions is to protect the Government's revenues and to prevent the unnecessary loss of tax funds by reaching those individuals responsible for the corporation's failure to pay taxes that are owed. To be held liable for the payroll taxes, the corporate officer must be found to be a "responsible person" and his

---

1. *See Slodov v. United States,* 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978); *Bolding v. United States,* 215 Ct.Cl. 148, 565 F.2d 663 (1977).

2. IRC § 6672 provides:
   "§ 6672. Failure to collect and pay over tax, or attempt to evade or defeat tax
   "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or

defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. . . ."
   Section 6671(b) defines the term "person" to include:
   ". . . an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."

failure to pay over the taxes must be shown to have been "willful."

Plaintiff presents his claim for a refund on the concept that he was not a "responsible person" for payroll tax purposes until he took over as president on August 24, 1968. Prior to that date, although he was an assistant vice president, or, after May 3, 1968, a vice president, he was not authorized to sign payroll checks and his sales function kept him out of the Houston office for the greater part of the time. Liability for collection of the taxes and creation of the trust fund occurs at each pay period. Accordingly, plaintiff contends, withheld taxes for April, May, June, and July 1968, were due to the United States before he had the power or responsibility to collect them. Plaintiff acknowledges he was a responsible person within the meaning of IRC §§ 6671 and 6672 for payroll taxes for 1968 3rd and 4th quarters. He further argues, however, although after August 24, 1968, he was responsible, there is no liability for any of the taxes because when he took over he had no way of knowing about Super Slide's delinquency and as soon as he became aware that returns had not been filed and the taxes had not been paid, he voluntarily went to the IRS and cooperated in collection of the taxes. Accordingly, he argues the failure to report and pay the taxes was not a willful act under IRC § 6672.

Plaintiff asserts he did not "willfully" fail to collect and pay over because his actions were consonant with an attempt to rescue a financially beleaguered corporation from bankruptcy, and his actions, therefor, did not tend to impede collection of trust fund taxes. Before August 24, 1968, plaintiff says he did not know about the tax situation, and after August 24, 1968, his repeated efforts to obtain records from the corporation's former certified public accountant were unsuccessful. Ultimately the Forms 941 had to be prepared from

records in Houston, Texas, a task that took approximately 3 months. If the first 3 months after August 24, 1968, had been used to search the records in an attempt to prepare the Forms 941, plaintiff emphasizes that there would have been no Super Slide operations to control, nor any funds available to pay the IRS.

■ The facts of this case do not accord with the theory of plaintiff's claim, nor with his argument. Even if it is conceded that plaintiff was not a "responsible person" at the time the trust fund for payroll taxes was created prior to August 24, 1968 (a matter which is not at all free from doubt), plaintiff nonetheless would be obligated to report and pay the payroll taxes for 1968 2nd quarter. A responsible person is liable for outstanding payroll tax liability accrued as of the time he undertakes the duties that make him a responsible person, to the extent of the corporation's liquid assets on that date.[3]

As of August 24, 1968, Super Slide had cash available far in excess of the amount then owed to the United States. On July 15, 1968, Super Slide had $45,173.81 in an account at the Commercial State Bank, and as of August 30, 1968, Super Slide's cash balance with that bank was $24,520.99. In addition, as of August 31, 1968, Super Slide had accounts receivable attributable to previously consummated sales of $108,879.82, and total current assets of $402,294.62.

■ If the preference for debts of other creditors over the liability to the United States by one under a duty to pay over payroll taxes is intentional, it constitutes a willful failure to collect and pay over the taxes within the meaning of IRC § 6672.[4] Willfulness is shown when the facts demonstrate that the taxpayer used corporate funds to pay other creditors and that he did so knowing that sums owing the Government remained unpaid.[5] Plaintiff's conduct

**3.** *Slodov v. United States,* 436 U.S. at 249–250, 98 S.Ct. at 1786–1787; *Gutman v. United States,* 79–2 USTC ¶ 9598, at 88177, *aff'd per curiam* 222 Ct.Cl. 537, 618 F.2d 125 (1979).

**4.** *Bolding v. United States,* 565 F.2d at 671.

**5.** *Burack v. United States,* 198 Ct.Cl. 855. 461 F.2d 1282 (1972); *Scott v. United States,* 173 Ct.Cl. 650, 354 F.2d 292 (1965).

after he became president establishes willful failure to collect and pay over taxes within the meaning of IRC § 6672.

All the facts and circumstances show that plaintiff was responsible for collection and payment of payroll taxes after August 24, 1968, when he became president. Plaintiff had complete authority and day-to-day control of Super Slide's operations, and complete responsibility for its financial affairs.

■ During July 1968, Super Slide's officers and employees discussed suppliers' and creditors' dissatisfaction, as well as the financial condition of the corporation, and the fact that 1968 2nd quarter taxes were due. Monthly notices from the IRS concerning the failure of Super Slide to deposit taxes for the 2nd quarter began in June 1968.

The evidence shows that during the entire time plaintiff was president of Super Slide after August 24, 1968, he was aware that taxes were owed to the Government. During the first 2 weeks after he became president, in meetings with Super Slide's treasurer, plaintiff was told of the tax amounts that were owed, and he refused to approve the tax payments.

■ Notwithstanding his knowledge that payroll taxes were due, plaintiff signed checks, or authorized signature to checks, made out to other creditors in amounts more than sufficient to have discharged the entire payroll tax liability. Plaintiff's willful failure to pay taxes owed to the Government is underscored by payments made by Super Slide to himself. During the three taxable quarters in issue, pursuant to the May 1, 1968, agreement, Super Slide paid plaintiff at least $112,149. On October 3, 1968, approximately when plaintiff claims he became aware of the tax liability, Super Slide paid plaintiff $21,000.

## CONCLUSION

Howard R. Wilkinson was a responsible person within the meaning of IRC §§ 6671(b) and 6672 who willfully failed to pay over payroll taxes due from Super Slide East, Inc. Plaintiff is not entitled to recover on his claim, and defendant is entitled to recover on its counterclaim. Judgment will be entered for defendant for $46,146.08, together with interest as provided by law, and plaintiff's petition (now complaint) will be dismissed.