In re S. David PLUMMER aka Spencer David Plummer and Debora D. Plummer aka Debby Plummer, aw Viking Ranches, Inc., a Utah corporation, aw Band of Azure, Inc., aw, Viking Ranches Management, Inc., Debtors.

UNITED STATES of America, Plaintiff,

v.

S. David PLUMMER and Debora Plummer, Defendants.

Bankruptcy No. SB 88–03757 DN.
Adv. No. SB 91–1130 DN.

United States Bankruptcy Court,
C.D. California.

Sept. 15, 1992.

Lourdes G. Baird, U.S. Atty., Mason C. Lewis, Asst. U.S. Atty., Chief, Tax Div., Robert N. Kwan, Asst. U.S. Atty., Los Angeles, CA, for plaintiff U.S.

Robert Poyourow, Los Angeles, CA, for debtors.

## MEMORANDUM OF DECISION

DAVID N. NAUGLE, Bankruptcy Judge.

### INTRODUCTION

Viking Ranches, Inc. ("Viking Ranches") filed a petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, on March 10, 1988. Two months later, S. David and Debora Plummer ("Plummers" or "Debtors") also filed for Chapter 11 protection. The Internal Revenue Service ("IRS") filed this action against the Plummers to determine the amount of its claim. Both parties have requested summary judgment.

In their amended schedules, the Plummers listed a debt to the IRS of "56,000" for "Corporate FICA Taxes".[1] While the IRS filed a claim for $64,219.71 after confirmation of the Plummers' plan, the IRS has withdrawn that claim. The IRS is now content to rely on § 1111(a) and the figure listed by the Debtors on their schedule.[2] In their counterclaim, the Debtors allege the IRS incorrectly applied several payments of corporate taxes by Viking Ranches to the IRS.[3] Had these payments been applied in the manner proposed by the Debtors, the Debtors' personal liability to the IRS would have been reduced significantly.

For the reasons stated below, this court grants summary judgment to the IRS. The IRS claim shall be allowed in the amount of $56,000.

1. Debtor's Amended Schedule A–1, p. 6.

2. The debtors did not list the $56,000 as disputed, contingent, or unliquidated.

3. In their initial answer and counterclaim, the Plummers alleged the IRS violated the terms of the Plummers' confirmed reorganization plan by filing a lien against certain property. The IRS revoked this action by filing a Notice of Inadver-

## A. THE INTERNAL REVENUE SERVICE APPLIED THE THREE PRE–PETITION PAYMENTS BY VIKING RANCHES APPROPRIATELY.

■ The Internal Revenue Code requires employers to collect income taxes and social security taxes from their employees. 26 U.S.C. §§ 3102(a), 3402(a). Employers must turn these funds over to the IRS. Because the Internal Revenue Code imposes a trust on these funds, the withheld taxes are commonly referred to as "trust fund" taxes. 26 U.S.C. § 7501; *Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 1778, 56 L.Ed.2d 251 (1978). Corporate entities must also pay other taxes including the employer's share of social security taxes, corporate income taxes, interest and penalties, but the funds used to pay these obligations are not held "in trust" in the same sense as the other collections.

■ The distinction between trust fund and non-trust fund taxes is critical to certain key personnel of an employer. The Internal Revenue Code imposes personal liability on the corporate officers responsible for collecting the trust fund taxes. 26 U.S.C. § 6672. If the employer fails to remit the trust fund taxes to the IRS, the Internal Revenue Code imposes a 100% penalty on the individuals responsible for collecting those funds for the employer. In effect, statutory policy makes key employees personal guarantors of trust fund taxes. Personal liability does not extend, however, to non-trust fund taxes.

As former executives of Viking Ranches, the Plummers acknowledge their personal liability for the trust fund taxes. While not disputing that basis for liability, the Plummers do object to the accounting method employed by the IRS. The Plummers contend that had the IRS properly applied certain payments by Viking Ranches to the IRS, the amount of trust fund taxes owed by

tently Filed Notice of Federal Tax Lien within a month of the lien. Subsequently, the Plummers have not alleged any harm has resulted from these actions (Defendants' Response to Interrogatories Nos. 16 & 17) nor did they raise the issue at oral argument or address the matter in their proposed order of summary judgment. Therefore, no relief is granted.

Viking Ranches would have been reduced substantially with a concomitant reduction in personal exposure to the Plummers.

The disputed payments include three prepetition payments and one post-petition payment. On March 9, 1988, Viking Ranches made payments to the IRS in the amounts of $10,660.17, $17,500.00 and $24,596.48. The IRS applied the entire amounts of the $10,660.17 and $17,500.00 checks to the non-trust fund debt owed by Viking Ranches. A portion of the $24,596.48 payment was also applied toward non-trust fund taxes ($11,707.90), while the remainder ($12,888.58) was used to reduce the trust fund obligations of Viking Ranches. In total, the IRS received $52,756.65 and applied $39,868.07 toward non-trust fund taxes. The Plummers believe the $39,868.07 should have been applied to the trust fund debt of Viking Ranches resulting in a reduction of the Plummers' personal liability by the same amount. The court disagrees.

■ It is undisputed by both parties that Viking Ranches did not indicate to the IRS how the pre-petition payments should be applied. No letter or correspondence accompanied the checks. No notation appeared on the checks received by the IRS. In the absence of a designation, it is well settled that the IRS enjoys the right to apply payments in the manner it chooses. *Pacific National Insurance v. United States,* 422 F.2d 26, 33 (9th Cir.1970), *cert. denied,* 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269 (1970); *Liddon v. United States,* 448 F.2d 509, 513 (5th Cir.1971), *cert. denied,* 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972); *See also, In re Technical Knockout Graphics, Inc.,* 833 F.2d 797, 801 (9th Cir.1987); *Muntwyler v. United States,* 703 F.2d 1030, 1032 (7th Cir.1983); *In re Stanmock, Inc.,* 103 B.R. 228, 230 (9th Cir. BAP 1989); *United States v. Energy Resources Co., Inc.,* 495 U.S. 545, 547–48, 110 S.Ct. 2139, 2141, 109 L.Ed.2d 580 (1990). Counsel for Plummers argues, in effect, that a recent Supreme Court decision, *Begier v. I.R.S.,* 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) has overruled this line of cases.

In *Begier,* the corporate employer made certain payments to the IRS and specifically designated them toward trust fund taxes. Since some payments were made within the ninety day preference period, the trustee attempted to use 11 U.S.C. § 547(b) to revoke the payments and return the funds to the bankruptcy estate. The Supreme Court concluded that funds held in trust were not "an interest of the debtor in property" within the meaning of § 547(b).[4] Thus, the trustee failed to satisfy § 547(b) and therefore could not revoke specific payments made by the debtor.

The *Begier* decision turns on the nature of the trust imposed by the Internal Revenue Code which differs from most other trusts. The Code simply declares:

> Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. 26 U.S.C. § 7501.

Unlike normal trusts, no res is immediately identified with respect to withheld taxes. In his concurrence, Justice Scalia discussed this dilemma noting that "[w]hen I pay a worker $90 there is no clearly identifiable locus of the $10 in withheld taxes that I do *not* pay him. Indeed, if my total assets at the time of payment are $90 there is no conceivable locus." *Begier,* at 71, 110 S.Ct. at 2269 (original emphasis).

The Court resolved this dilemma by concluding that the "debtor's act of voluntarily paying its trust-fund tax obligation ... [was] alone sufficient to establish the required nexus between the 'amount' held in trust and the funds paid." Thus, the Court believed the trust existed from the moment the funds were withheld from the employees' paychecks, but were simply not identified among the general commingled assets of the employer until the employer made a designated payment to the IRS. That designated payment sufficiently identified the assets of the trust and rendered those funds invulnerable to § 547(b).

---

**4.** The Supreme Court believed this conclusion was also consistent with § 541(d). That section defines the parameters of the bankruptcy estate and only includes property to the extent "of any equitable interest." Since the *Begier* debtor had no equitable interest in trust funds, those funds did not become part of the estate or subject to preference law.

■ In summary, the *Begier* decision stands for the proposition that funds designated by the debtor for payment of trust fund taxes are part of a trust res under the Internal Revenue Code. Since designation by the debtor is crucial, the failure by Viking Ranches to designate its payments to the IRS renders the *Begier* decision inapplicable. Had Viking Ranches designated its payments appropriately, *Begier* would serve as a protective shield against preference law. Instead, the Plummers ask this court to use *Begier* as a sword to force the IRS to apply undesignated funds toward trust fund obligations.[5] Such a conclusion would not only expand the holding in *Begier*, but would also overrule well established judicial precedent supporting IRS discretion to direct undesignated payments. *Supra*, at p. 286.

Consequently, this court finds the IRS allocated the three March 9, 1988 payments appropriately.

## B. JUDICIAL DISAPPROVAL OF IRS ACTIONS WITH RESPECT TO THE POST–PETITION REFUND CHECK AND REPAYMENT BY VIKING RANCHES WILL NOT REDUCE AN IRS CLAIM BASED ON THE DEBTORS' SCHEDULE.

■ The post-petition payment of $28,-931.28 on April 21, 1989 by Viking Ranches presents a novel issue. The IRS admits this payment constitutes complete repayment of an erroneously issued IRS refund. Three days prior to the payment, the IRS sent Viking Ranches a refund check for the same amount. Confused about the appropriateness of the refund, Viking Ranches contacted the IRS which then discovered the check had been issued erroneously. The IRS ordered Viking Ranches to immediately cash the refund check and send a Viking Ranches check for the same amount. Upon receipt of this payment, the IRS applied $6,439.94 toward non-trust fund taxes and $22,491.34 to trust fund taxes.

The Plummers object because apparently the entire refund consisted of trust fund taxes. As a result, the erroneous refund increased the trust fund debt in the amount of the refund—$28,931.28. However, instead of applying the Viking Ranches repayment entirely against that increase in trust fund debt, the IRS chose to apply a portion of the refund repayment ($6,439.94) to non-trust fund taxes. Thus, the refund mistake and the allocation decision by the IRS effectively increased Viking Ranches' trust fund debt by nearly six and one-half thousand dollars with a concomitant increase in the personal exposure of the Plummers. The Plummers believe this action by the IRS was abusive and request a reduction of the $56,000 IRS claim

---

**5.** This court also rejects the Plummers' argument that *United States v. Energy Resources*, 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990) supports their request for forced designation. The decision in *Energy Resources* permits a bankruptcy court to require the IRS to accept designated payments as part of a Chapter 11 plan. Thus, if and only if the action "is necessary for a [corporate] reorganization's success", a bankruptcy court can force the IRS to accept plan payments in satisfaction of trust fund taxes first with later payments satisfying non-trust fund taxes. *Energy Resources*, at 551, 110 S.Ct. at 2143; *See also, In re GLK, Inc.*, 921 F.2d 967, 968 (9th Cir.1990). Courts have found this allocation discretion necessary when a successful corporate reorganization hinges on the efforts of key officers who are also personally liable for the trust fund taxes. In the absence of designated plan payments, such officers would legitimately prefer liquidation of the corporate entity rather than reorganization in order to limit their personal liability.

The Plummers extrapolate the principle of *Energy Resources* by arguing that because designation is important to their *personal* reorganization efforts, the court should force the IRS to designate payments. This court does not doubt that a blanket rule forcing the IRS to designate every payment it receives to trust fund obligations first would assist many personal reorganization efforts, including the Plummers. *Energy Resources*, however, does not offer this kind of wholesale debt relief. The Supreme Court concluded that a bankruptcy court has the power to force the IRS to designate in the context of a proposed plan of reorganization under § 1123(b)(5) and § 105, but only if designation was necessary to the successful reorganization of the *corporate* debtor. Since the Plummers concede the reorganization plan of Viking Ranches has failed (Opposition of Defendants Plummers to the Summary Judgment Motion, p. 7), the Plummers have no recourse under *Energy Resources*. *See, In re Gregory Engine & Machine Services, Inc.*, 135 B.R. 807, 809 (Bkrtcy.E.D.Tex. 1992).

by $6,439.94. While the court agrees that the IRS action was inappropriate, this conclusion will not reduce the amount of an IRS claim calculated *prior* to the relevant events.

The timing in this case controls the result. In June of 1988, the Plummers listed an IRS debt of $56,000 on their amended petition. In April of 1989, the IRS sent the refund check and Viking Ranches promptly issued a repayment check. On August 20, 1990, the IRS filed its only formal claim in the Plummers case claiming a trust fund debt of $64,-219.71. This filing, however, occurred two years after the petition date and three days after confirmation of the Plummers' plan of reorganization. The Plummers immediately objected and the IRS withdrew its claim before judicial action occurred. In withdrawing its claim, the IRS decided to rely solely on the listing of $56,000 by the debtor at the time of the petition.

Interestingly, had the Plummers not objected to the filing of the IRS claim, this court believes—for reasons stated below—the Plummers would be entitled to have the $64,219.71 claim reduced by $6,439.94. The $64,219.71 figure reflects a $6,439.94 increase in trust fund debt due to the refund check problem which occurred the year before. Nevertheless, the Plummers did object to the IRS claim. Therefore, the only figure before this court is the $56,000 listed by the Debtors which creates a timing problem for the Plummers' argument.

The $56,000 figure purports to be a statement of liability existing as of the petition date which was one year *prior* to the issuance of the erroneous refund check. Thus, even if this court agrees that the IRS behaved inappropriately later, that conclusion would not *reduce* the $56,000. Since receipt of the erroneous refund check and repayment occurred after the petition date, the $6,429.94 was added to the $56,000 debt listed by the Debtors. Therefore, even if this court agrees with the debtor that the refund check and repayment should have cancelled each other out completely the allowed amount of the IRS claim will not be less than $56,000.

## C. THE POST–PETITION REPAYMENT OF THE ERRONEOUS IRS REFUND SHOULD HAVE BEEN CREDITED TOWARD TRUST FUND TAXES ENTIRELY.

The IRS believes it acted appropriately with respect to the mistakenly issued refund check and the post-petition repayment by Viking Ranches. Indeed, the IRS believes it is entitled to *increase* the trust fund debt of Viking Ranches and the personal liability of the Plummers by $6,429.94 through reallocation of a post-petition refund repayment. The IRS defends its actions based on a notion that any payment by a debtor in bankruptcy is *per se* involuntary and, as such, can be applied in any manner the IRS sees fit. The court rejects this argument.

First, reliance by the IRS on certain cases discussing the hazy and often misleading distinction between voluntary and involuntary payments is misplaced. The majority of those cases concern payments to the IRS under a reorganization plan. *See, e.g., In re Stanmock, Inc.,* 103 B.R. 228 (9th Cir. BAP 1989). The IRS has cited the Ninth Circuit Court of Appeals case that characterizes post-petition payments to the IRS occurring prior to plan confirmation as involuntary. *In re Technical Knockout Graphics,* 833 F.2d 797 (9th Cir.1987). The facts of that case, however, were substantially different and the holding is readily distinguishable.

The decision in *TKO Graphics* rests on the principle that a debtor should not be permitted to use judicial authority to accomplish a goal unattainable without bankruptcy protection: prevention of collection efforts by all creditors while selectively forcing the IRS to accept designated payments in satisfaction of trust fund obligations. The Ninth Circuit Court of Appeals considered such a use of judicial action to reduce the personal liability of insiders distasteful and stated that the debtor "is not free to abuse [the bankruptcy] system" in this manner. *Id.* at 803.

Ironically, the IRS now seeks to turn *TKO Graphics* on its head. The IRS threatens with this refund procedure to accomplish an otherwise unattainable goal: the reallocation of designated taxpayer payments from trust

fund accounts to non-trust fund accounts by allowing the IRS to choose how to reallocate a debtor's refund repayment. Nothing in *TKO Graphics* supports that action by the IRS.

Viking Ranches simply returned an erroneous IRS refund. Any wise individual would be well advised to behave similarly. The fact that the corporation had previously filed a bankruptcy petition mattered little with respect to this payment. The fact that Viking Ranches was under the protection of bankruptcy law did not make the payment less "voluntary." [6]

Finally, the IRS' position is only tenable because Viking Ranches carefully followed the IRS' instructions to cash the refund check and issued its own check. Had Viking Ranches simply destroyed the IRS check, the IRS would have been unable to allocate the taxes as it has. Such a result would have been easier for Viking Ranches administratively and considerably more burdensome on the IRS. Thus, this court will decline to punish individuals for cooperating fully with the IRS.

In conclusion, this court finds the IRS possesses an allowed claim in the amount listed on the Debtor's schedule—$56,000. The IRS is not entitled to have the claim increased by $6,439.94 nor are the Plummers entitled to a decrease by the same amount. As a result, the plaintiff IRS' motion for summary judgment is granted and the Plummers' motion for summary judgment is denied.

This memorandum contains the court's findings of fact and conclusions of law.

### SUMMARY JUDGMENT

This case came on regularly for hearing on August 26, 1992, before the Honorable David N. Naugle, United States Bankruptcy Judge, United States Bankruptcy Court, upon the motion of plaintiff United States of America for summary judgment. Robert N. Kwan, Assistant United States Attorney, appeared for the United States of America. Robert Poyourow, Esquire, Law Offices of Robert Poyourow, appeared for defendants David Plummer and Debora Plummer. Other appearances were as noted on the record.

After considering the pleadings, declarations and exhibits, and having heard the arguments of counsel, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1. The United States' motion for summary judgment is GRANTED.

2. The claim of plaintiff United States in the amount of $56,000 as scheduled by the debtors on their schedules attached to their amended petition in bankruptcy filed on June 1, 1988 is an allowed unsecured priority claim.

IT IS SO ORDERED.

---

6. Arguing for a strict *per se* interpretation of bankruptcy case law (i.e. any payment by a debtor in bankruptcy is "involuntary") does not necessarily assist the IRS. It is questionable, for example, whether under a strict interpretation of bankruptcy law the misdirected funds of third parties ever become part of a debtor's bankruptcy estate under § 541.