In re RUGGERI ELECTRICAL
CONTRACTING, INC.,
Debtor.

UNITED STATES of America,
Plaintiff/Counter–
Defendant,

v.

Paul BOROCK, Trustee,
Defendant/Counter–
Plaintiff.

Bankruptcy No. 93–49180–R.
Adv. No. 95–4059–R.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Aug. 21, 1996.

Karen Smith, Department of Justice, Washington, DC, for Plaintiff.

Timothy Miller, Detroit, Michigan, for Trustee.

Robert Gordon, Southfield, MI, for all other Defendants.

---

## OPINION REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT ON COUNTER–CLAIM

STEVEN W. RHODES, Chief Judge.

The question presented is whether a prepetition levy by the Internal Revenue Service on funds in the debtor's bank account constitutes a transfer of an interest of the debtor in property and is therefore avoidable as a preference under 11 U.S.C. § 547(b). The government argues the funds in the debtor's bank account were held in trust for its benefit. The trustee argues the funds were property of the debtor. The Court concludes that no material factual issues exist; that the funds were not held in trust for the IRS at the time of the levy; that prior to the levy, the debtor possessed an interest in the funds; and that the levy operated as an involuntary transfer of the debtor's interest in the funds which is a preferential transfer recoverable by the trustee.

### I.

The debtor, an electrical contractor, became delinquent on its payroll taxes in 1992. By the third quarter of 1992, the debtor owed in excess of $150,000 to the Internal Revenue Service for unpaid withholding taxes. The debtor's principal, Reno Ruggeri, and the IRS, through collections officer, Karen Johnson, entered into an agreement in which the debtor would pay off the IRS in $5,000 monthly installments. The debtor began making the $5,000 installment payments in September, 1992, and continued each month thereafter until March of 1993. These payments were made from the debtor's general operating account at the National Bank of Detroit.

The debtor stayed current on its taxes in the fourth quarter of 1992 but fell behind again by the end of the first quarter of 1993. After March of 1993, the debtor stopped making the $5,000 installment payments. However, on May 4, 1993, the debtor made a $50,000 payment to the IRS, and a $10,000 payment on May 27. The May 4 payment was designated toward the delinquent withholding taxes; the May 27 payment was not. The May 4 payment was made after the debtor had collected some accounts receivable. As Reno Ruggeri explained in deposition:

> We made a collection off of a job. And I think it was a verbal agreement between Karen [Johnson] and I—I'm not sure—as soon as I got this money, that I would give it to the I.R.S.

Deposition of Reno Ruggeri; Oct. 5, 1995, at 21–22.

The May 27 payment was not made pursuant to any similar verbal agreement. According to Reno Ruggeri, the May 27 payment was made because the debtor's delinquency with the IRS put the debtor into default on a loan with its bank. The $10,000 was an attempt "to get back in compliance with the IRS," in order to appease the bank. Deposition of Reno Ruggeri, Oct. 5, 1995, at 22.

Ultimately, the bank demanded that the debtor either pay off its note or pay off its delinquency with the IRS. The debtor was unable to do either. Then the local electrical workers' union demanded money the debtor owed to them. Unable to negotiate any compromises with the bank or the union, the debtor terminated business operation in April, 1993. The debtor auctioned its assets the following June. The proceeds of the auction were intended to first pay the bank and then the IRS. But the actual proceeds from the auction were insufficient to pay off the bank completely.

On June 7, 1993, the electrical workers' union obtained a judgment against the debtor in federal district court for unpaid contributions to fringe benefits. Subsequently, the union sought to enjoin the debtor from making any further payments to creditors. The

injunction was granted on June 30, 1993. One effect of the injunction was to freeze the debtor's general bank account. The debtor, who had continued to collect accounts receivable, had $54,306.53 in its account at that time.

On August 4, 1993, the IRS issued a notice of levy on the debtor's account. At that point, the debtor's total tax debt was $195,661.60. After receiving the notice of levy, the bank debited the debtor's account in the amount of $6,884.98 to pay off the deficiency loan balance, an audit fee, and attorney fees. The bank retained the $47,422.55 balance.

Twenty days after the notice of levy was issued, on August 24, 1993, an involuntary petition was filed against the debtor by several judgment creditors including the Electrical Workers' Fringe Benefit Fund. The bank turned over the balance of the debtor's account to the trustee.

The IRS filed a complaint against the trustee seeking a declaratory judgment that the funds from the debtor's bank account were not property of the estate but belonged to the IRS. Cross-motions for summary judgment on the complaint were heard and in a bench opinion of June 12, 1995,[1] the Court held that after the IRS's levy on the debtor's bank account, the debtor did not retain any interest in the funds in the account and that therefore, the funds did not become property of the estate. As part of its ruling, however, the Court permitted the trustee to file a counter-claim against the government in order to determine whether the levy operated as a transfer of the debtor's funds which could be recovered under 11 U.S.C. § 547. The trustee complied by filing that counter-claim on June 26, 1995. Both parties have filed motions for summary judgment.

### II.

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Under Rule 56(c), a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Section 547(b) of the Code sets forth the elements of an avoidable preference:

> [T]he trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
>> (A) on or within 90 days before the date of the filing of the petition; or
>>
>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
>> (A) the case were a case under chapter 7 of this title;
>>
>> (B) the transfer had not been made; and
>>
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

In this case, the sole dispute is whether the levy on the debtor's bank account funds constitutes a transfer of an interest of the debtor in property.

### III.

Under 26 U.S.C. § 7501, taxes withheld by an employer are expressly designated with a trust for the benefit of the United States:

> Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of the tax so collected or withheld shall be held to be a special fund in trust for the United States.

---

1. The bench opinion was supplemented by a published opinion. *United States v. Borock (In re Ruggeri Elec. Contracting, Inc.)*, 185 B.R. 750 (Bankr.E.D.Mich.1995).

■ The trust is imposed at the moment the employer pays the employee, whether or not the employer segregates the funds. *Begier v. IRS,* 496 U.S. 53, 61–62, 110 S.Ct. 2258, 2264–65, 110 L.Ed.2d 46 (1990). Accordingly, the taxes the debtor withheld but failed to pay in the first three quarters of 1992 and the first quarter of 1993 were imposed with a § 7501 trust at the time the debtor paid its employees. *See Slodov v. United States,* 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978); 26 U.S.C. §§ 3102(a), 3402(a), 7501.

However, the existence of the § 7501 trust does not resolve the question of whether or not the particular dollars in the debtor's bank account, levied upon by the IRS, were trust funds. *Begier,* 496 U.S. at 62, 110 S.Ct. at 2264. Under *Begier,* "[o]nly if those particular funds were held in trust for the IRS do they escape characterization as 'property of the debtor.'" *Id.*

In *Begier,* the Supreme Court acknowledged that a "serious problem" exists when § 7501 taxes are commingled with other assets of the debtor. Despite the fact that § 7501 creates a trust for withheld taxes at the moment an employer pays wages to employees, there is not necessarily a clearly identifiable locus of the withheld taxes at the time the debtor files bankruptcy. *Begier,* 496 U.S. at 70–71, 110 S.Ct. at 2269 (Scalia, J., concurring) ("When I pay a worker $90 there is no clearly identifiable locus of the $10 in withheld taxes that I do *not* pay him. Indeed, if my total assets at the time of the payment are $90 there is no conceivable locus."). To resolve the problem, the Supreme Court interpreted remarks made by Representative Edwards concerning the Bankruptcy Reform Act of 1978 as evidence of Congress's intent to require the IRS to "demonstrate that amounts of withheld taxes are still in the possession of the debtor at the commencement of the case." *Id.* at 65, 110 S.Ct. at 2266 (*quoting* 124 Cong.Rec. at 32417 (1978) (remarks of Rep. Edwards)).

The Supreme Court gave little guidance as to how extensive the connection between the § 7501 trust and the assets at issue had to be, stating only that "[t]he courts are directed to apply 'reasonable assumptions' to govern the tracing of funds...." *Id.* at 67, 110 S.Ct. at 2267.

In *Begier,* the connection was established by the debtor's act of voluntarily paying its trust-fund tax obligation pre-petition. The "reasonable assumption" in the *Begier* case was that "any voluntary pre-petition payment of trust-fund taxes out of the debtor's assets is not a transfer of the debtor's property." *Id.* at 67, 110 S.Ct. at 2267. This was premised on language in a House Report stating that "[a] payment of withholding taxes constitutes a payment of money held in trust under Internal Revenue Code § 7501(a) ... if [those taxes] have been properly held for payment, as they will have been if the debtor is able to make the payments." *Id.* at 66, 110 S.Ct. at 2267 (*quoting* H.R.Rep. No. 95–595 at 373, U.S.C.C.A.N. 1978 at 6329). In other words, the debtor's voluntary payment clearly identified the reasonable assumption of the § 7501 trust.

### IV.

Unlike *Begier,* there has been no voluntary payment in this case. The government admits the IRS's levy does not constitute a voluntary payment. Nonetheless, the government contends that *Begier* is not specifically limited to a rule that only a voluntary payment can establish the required connection between trust and assets. Rather, the government asserts *Begier* extends to involuntary payments so long as a "reasonable nexus" is established between the withholding taxes and the funds in question. In this case, the government maintains that it is reasonable to assume that by the time of the IRS's levy, the only funds in the debtor's bank account were from accounts receivable the debtor collected from jobs it had been able to perform by using withholding taxes to pay operating costs. The government apparently believes that making this reasonable connection between the taxes and the funds in the bank account suffices to identify the locus of the § 7501 trust in the levied funds.

The government offers no authority for its position, citing in its argument only *Begier* and *In re Hearing of Illinois, Inc.,* 110 B.R. 380 (Bankr.C.D.Ill.1990), *rev'd on other grounds, Christison v. United States,* 960

F.2d 613 (7th Cir.1992), which the government attempts to distinguish. In *Hearing of Illinois,* the bankruptcy court refused to extend *Begier* to permit an IRS levy on accounts receivable held by a third party on the debtor's behalf to withstand avoidance. *Hearing of Illinois,* 110 B.R. at 383. The government argues that *Hearing of Illinois* is distinguishable because there the debtor did not, at any time prior to the IRS's levy, have the ability to voluntarily pay the levied funds to the IRS, whereas in this case, the debtor had the right, the ability, and the intent to pay the IRS with funds in its account prior to the levy. According to the government, the debtor was prevented from paying the IRS only by the union's injunction, which froze all of the debtor's assets.

The trustee cites *In re Plummer,* 174 B.R. 284 (Bankr.C.D.Cal.1992), in arguing that the government's reliance on *Begier* is misplaced. In *Plummer,* the debtor had made three prepetition payments to the IRS, which the IRS applied to debt other than the debtor's unpaid withholding taxes. The debtor's principals argued that the IRS should have applied payments to the withholding tax debt, relying on *Begier.* The court rejected the argument on the grounds that under *Begier,* "funds designated by the debtor for payment of trust fund taxes are part of a trust reasonable under the Internal Revenue Code." *Plummer,* 174 B.R. at 287. That designation by the debtor was critical, the *Plummer* court found. Had the debtor there designated its payments, *Begier* would have protected the payments from a preference action. However, the *Plummer* court would not permit *Begier* to be used to compel the IRS to apply undesignated funds towards the unpaid withholding tax trust. As the court stated,

> Since designation by the debtor is crucial, the failure of [the debtor] to designate its payments to the IRS renders the *Begier* decision inapplicable. Had [the debtor] designated its payments appropriately, *Begier* would serve as a protective shield against preference law. Instead, the Plummers ask this court to use *Begier* as a sword to force the IRS to apply undesignated funds toward trust fund obligations. Such a conclusion would not only expand the holding in *Begier,* but would also over-

rule well established judicial precedent supporting IRS discretion to direct undesignated payments.

*Id.* at 287.

Other post-*Begier* decisions support not only the *Plummer* analysis that "designation by the debtor is crucial," but express a similar unwillingness to extend *Begier* beyond the scope of its holding. In *Wasden v. Florida Dep't of Revenue (In re Wellington Foods, Inc.),* 165 B.R. 719 (Bankr.S.D.Ga. 1994), the debtor made a voluntary pre-petition payment to the IRS, designated as trust-fund taxes. The trustee contended that because the lowest intermediate balance in the debtor's accounts fell below the amount of the tax obligation, the trust status of the pre-petition payment was lost. The court rejected that argument on the ground that *Begier* "did not restrict its holding to a case where a debtor maintains sufficient funds in its accounts to cover the trust-fund payment." *Wellington Foods,* 165 B.R. at 726. Rather, a "conclusive presumption" of a reasonable nexus between the taxes and assets, which creates the trust, "arises upon voluntary payment, regardless of the source of the payments and regardless of any intervening balance in the debtor's aggregate operating accounts." *Id.*

Moreover, the *Wellington Foods* court also found that a voluntary payment is critical to application of *Begier:*

> Without the predicate act of voluntary remittance, there is no conclusive presumption of a nexus between the creation of the trust and any particular assets of the debtor (unless of course the debtor has properly separated the trust-fund taxes from the rest of his assets). As a result, where there has been no voluntary payment, a taxing authority is still required to establish some sort of nexus through the use of traditional trust-fund tracing rules, such as the "lowest intermediate balance" rule.

*Id.* at 728.

### V.

The Court concludes that, as a matter of law, the levy upon the debtor's bank account by the IRS is an avoidable preference. As in

*Plummer* and *Wellington Foods,* this Court rejects the government's use of *Begier.* That case can properly be used as a shield to protect the government from liability for a voluntary preferential payment, but it cannot be used as a sword to enable the government to effect an involuntary transfer. This debtor did not make a voluntary payment. The debtor may have intended to use the money to pay its tax debt, but it never got the opportunity to carry out that intent. Under *Begier,* a voluntary payment establishes a nexus between the § 7501 trust and the assets in the debtor's bank account. Without the voluntary payment, *Begier* is inapplicable.

Further, the government has not otherwise demonstrated a sufficient connection between the funds it levied upon and the § 7501 trust. Indeed, it may be impossible to do so. As the government recognizes, the union's injunction prevented the debtor from accessing any of the funds in its bank account. The debtor could not use the funds for any purpose. The significance of the injunction is that the union obtained it pursuant to a judgment against the debtor for unpaid benefit contributions. Thus, the amounts remaining in the debtor's bank account could just as well have been funds that should have been paid to the union. There is no longer any reasonable basis on which to assume, as the government proposes, that the funds in the account were § 7501 taxes. Upon issuance of the injunction, any link between the funds in the debtor's bank account and a § 7501 trust was inextricably lost.

Finally, the Court notes that the government's broad reading of *Begier* subverts the Code's basic principle of equality of distribution among creditors.

The Court concludes that the Trustee's Motion for Summary Judgment on Counter-Claim must be granted.

An appropriate order will be entered.