**In re RUGGERI ELECTRICAL CONTRACTING, INC.,**
**Debtor.**

**UNITED STATES of America, Counter–Defendant/Appellant,**

**v.**

**Paul BOROCK, Trustee, Counter–Plaintiff/Appellee.**

No. 96–74136.
Bankruptcy No. 93–49180–R.
Adversary No. 95–4059–R.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 31, 1997.

Karen A. Smith, Tax Division, Justice Dept., Washington, DC, for U.S.

Timothy J. Miller, Detroit, MI, for trustee.

## OPINION AND ORDER AFFIRMING BANKRUPTCY COURT'S GRANT OF SUMMARY JUDGMENT FOR COUNTER-PLAINTIFF

ROSEN, District Judge.

### I. INTRODUCTION

This is an appeal from an order granting a Motion for Summary Judgment in the United States Bankruptcy Court, Eastern District of Michigan. On August 24, 1993, the creditors of Debtor Ruggeri Electrical ("the Debtor") filed an involuntary petition for bankruptcy under Chapter 7. On February 9, 1994, Paul Borock ("the Trustee") was appointed Chapter 7 Trustee of the Debtor's estate.

On January 23, 1995, the Internal Revenue Service ("the IRS") brought suit against the Trustee alleging that funds seized out of the Debtor's operating account by the Trustee belonged to the IRS pursuant to a 26 U.S.C. § 6631(a) pre-petition levy that the IRS issued on the funds on August 4, 1993. The Trustee filed a counter-claim alleging that the IRS's levy, filed between May 25, 1993 and August 24, 1993 (the "preference period") was preferential and, therefore, avoidable under 11 U.S.C. § 547(b). The IRS, relying on the Supreme Court's decision in *Begier v. I.R.S.,* 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990), asserts that because the funds levied were trust-fund taxes, they are not part of the bankruptcy estate and cannot be subject to preferential transfer avoidance by the Trustee. In the original proceeding, Chief Bankruptcy Judge Rhodes granted Summary Judgment for the IRS. In a bench opinion given June 12, 1995,

supplemented by a written opinion issued August 24, 1995, Judge Rhodes held that at the time of the involuntary bankruptcy filing against the Debtor, the funds were not property of the estate. On August 21, 1996, Judge Rhodes granted the Trustee's countermotion for Summary Judgment to avoid the IRS levy as a preferential transfer. The IRS now brings this appeal on the second ruling of Summary Judgment.

### II. FACTUAL BACKGROUND

Debtor Ruggeri Electronics provided electrical contracting services in the Detroit metropolitan area. Reno Ruggeri was the sole owner and president of the business. In the course of its business operations, the Debtor withheld money from its employees' paychecks to pay taxes incurred on the employees' wages and to fund the employees' pension plan. During 1992, however, the Debtor became delinquent in its obligation to remit the taxes held in trust, called "trust-fund" taxes. By the third quarter of 1992, the Debtor owed more than $150,000 in unpaid trust-fund taxes. The Debtor also owed $47,445.68 to the Electrical Workers' Fringe Benefit Fund ("the Union") for pension amounts withheld from employee paychecks but not remitted to the pension fund.

In September 1992, the Debtor entered into an agreement with the IRS, through Revenue Officer Karen Johnson. The agreement stipulated that the Debtor would make $5,000 monthly installment payments to the IRS, which the IRS retained discretion to apply to any portion of the Debtor's tax liability (either trust-fund debt or interest and penalties). The Debtor also promised to remain current on its future tax liabilities. In addition to the repayment agreement, the IRS filed a lien in September of 1992 to protect its interest in the Debtor's property.

The Debtor made its first $5,000 installment payment in September 1992, and continued to make the installment payments until March 1993. The Debtor made the installment payments from its general operating account at the National Bank of Detroit ("NBD"). The Debtor failed to make its monthly installment payments during March and April 1993. Due to this delinquency,

the Debtor violated one of its covenants on its loan with NBD. Thus, NBD demanded that the Debtor pay off, in full, either its note to NBD or its liability to the IRS. Because the Debtor could do neither, it terminated its business operations in April 1993.

On May 4, 1993, the Debtor made a $50,000 payment to the IRS which the Debtor designated to apply to its trust-fund tax obligation. The Debtor designated the payment informally, as explained by Reno Ruggeri in his deposition:

> We made a collection off a job. And I think it was a verbal agreement between Karen [Johnson] and I—I'm not sure—as soon as I got this money, that I would give it to the I.R.S. I mean, it was a verbal agreement, I think, or something. I'm not sure.

(Deposition of Reno Ruggeri at 21–22). On May 27, 1993, the Debtor made a $10,000 payment to the IRS, in order to compensate for the unpaid installments of March and April 1993, but made no formal designation on this payment.

On June 7, 1993, the Union obtained a judgement against the Debtor in federal district court for past-due unremitted withholding payments to the pension plan. Also in June, the Debtor auctioned its assets and applied the proceeds to its NBD obligation. On June 30, 1993, the District Court granted the Union an injunction which froze the Debtor's general bank account. The Debtor, who continued to collect on its accounts receivable, had $54,306.53 in its operating account at this time.

On August 4, 1993, the IRS converted its tax lien on the Debtor's property into a note of levy pursuant to 26 U.S.C. § 6331. At that time, the Debtor owed the IRS a total of $195,661.60. On the same day, NBD debited the Debtor's account for $6,884.94 to satisfy the deficiency loan balance, an audit fee, and attorney's fees.

Twenty days later, on August 24, 1993, several judgement creditors, including the Union, filed an Involuntary Bankruptcy Petition against the Debtor. NBD remitted the balance of the Debtor's account to the Trustee.

On January 23, 1995, the IRS filed a Complaint against the Trustee seeking a declaratory judgment that the funds from the Debtor's bank account were not property of the estate but, instead, were IRS property held in trust by the Debtor. The Bankruptcy Court heard Cross–Motions for Summary Judgment and held that after the IRS's levy on the Debtor's bank account, the Debtor did not retain any interest in the funds in the account and that therefore, the funds did not become property of the estate. *In re Ruggeri Elec. Contracting, Inc.*, 185 B.R. 750 (Bankr.E.D.Mich.1995). As part of its ruling, however, the Bankruptcy Court permitted the Trustee to file a counter-claim against the Government to determine whether the levy operated as a transfer of the Debtor's funds which could be recovered under 11 U.S.C. § 547. The Trustee filed his Counter–Claim on June 26, 1995. Thereafter, both parties filed Motions for Summary Judgment on the preference issue.

On August 21, 1996, Judge Rhodes granted the Trustee's Motion, concluding that the IRS had not demonstrated a sufficient nexus between the § 7501 trust and the funds seized. *In re Ruggeri Elec. Contracting, Inc.*, 199 B.R. 903 (Bankr.E.D.Mich.1996) (applying *Begier v. IRS*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990)).

### III. STANDARD OF REVIEW

In reviewing a grant of summary judgment, this Court applies the same standards that controlled the Bankruptcy Court's determination. *In re Sumpter*, 170 B.R. 908 (E.D.Mich.1994). *See also, Berlin v. Michigan Bell Tel. Co.*, 858 F.2d 1154, 1161 (6th Cir.1988). Bankruptcy Rule 7056 states that Rule 56 of the Federal Rules of Civil Procedure applies to motions for summary judgment in bankruptcy proceedings. Under Rule 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Three 1986 Supreme Court decisions—*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[1]

According to the *Celotex* Court:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment:

[*] Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

[*] The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

[*] This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case. * * *

[*] The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

[*] The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

[*] The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

*See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989) (footnotes with citations omitted). The Court will apply these principles in reviewing the Bankruptcy Court's grant of summary judgment to the Trustee.

## IV. ANALYSIS

▆▆▆A trustee in bankruptcy can avoid a debtor's transfer of the debtor's property to a creditor by satisfying the requirements of 11 U.S.C. § 547(b), which states:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent
>
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition; or
>
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under Chapter 7 of this title;
>
> (B) the transfer had not been made; and

---

**1.** "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A Charles A. Wright et al., *Federal Practice & Procedure*, § 2727, at 35 (Supp.1996).

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

However, § 547 only applies to the property of the bankruptcy estate. The Bankruptcy Code provides that this property does not include "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest. . . ." 11 U.S.C. § 541(d). The Internal Revenue Code states that taxes "collected or withheld shall be held to be a special fund in trust for the United States." 26 U.S.C. § 7501(a). *See also, Slodov v. United States,* 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978). The trust is imposed at the moment the employer pays the employee, whether or not the employer segregates the funds. *Begier v. I.R.S.,* 496 U.S. 53, 61–62, 110 S.Ct. 2258, 2264, 110 L.Ed.2d 46 (1990).

However, the existence of the § 7501 trust does not resolve the question of whether or not the particular dollars in the Debtor's bank account, levied by the IRS, were trust funds. *Begier,* 496 U.S. at 62, 110 S.Ct. at 2264–65. The IRS maintains that the funds in question, under the *Begier* test, fall under the purview of 26 U.S.C. § 7501 and, therefore, are not subject to the Trustee's power to set aside preferential transfers under 11 U.S.C. § 547.

In *Begier,* the debtor had fallen behind in payments of its federal income taxes, Federal Insurance Contributions Act (FICA) contributions, and excise taxes. The IRS ordered the debtor to deposit all trust-fund taxes it collected thereafter into a special bank account. The debtor established the account, but did not deposit funds sufficient to cover the entire amount of its trust-fund tax obligations. It nonetheless remained current on these obligations by paying the deficiency out of its general operating account. The debtor and the IRS agreed that the entire amount of these payments would be allocated specifically to the trust-fund tax obligations. The debtor then petitioned for Chapter 11 bankruptcy, which was later converted into Chapter 7. The Chapter 7 trustee filed a preference action in the bankruptcy court, seeking to recover the entire amount the debtor paid the IRS for trust-fund taxes within the ninety days preceding the filing of its bankruptcy petition. The Supreme Court held that a debtor's pre-petition payment of trust-fund taxes to the IRS from its general operating accounts did not constitute a transfer of "property of the debtor" under 11 U.S.C. § 547(b), but rather a transfer of property held in trust and as such could not be avoided as a preference by the bankruptcy trustee. *Begier,* 496 U.S. at 67, 110 S.Ct. at 2267.

Having determined the debtor created a trust upon the withholding of funds, the Court then inquired into whether the specific funds bore a sufficient relation to the trust itself. The Court dismissed the common-law tracing rules as "unhelpful" within the context of commingled bank accounts, *id.* at 63, 110 S.Ct. at 2265, and adopted language from the legislative history that courts should make "reasonable assumptions" to determine if a reasonable nexus exists between the funds withheld and the funds in question, *id.* at 65, 110 S.Ct. at 2266 (*quoting* 124 Cong. Rec. 32392, 32417).[2]

While applying the reasonable assumption test to the facts, the *Begier* Court relied on the House Report of the Bill, which states that a payment of withholding taxes will not be a preference if the debtor is able to make the payments. *Id.* at 66, 110 S.Ct. at 2266–67 (*quoting* H.R.Rep. No. 95–595, at 373). The Court concluded that one reasonable assumption would be that "*any* voluntary . . . payment" of trust-fund taxes would "establish the required nexus" between the funds withheld and the funds paid. *Id.* at 66–67, 110 S.Ct. at 2266–67 (emphasis in original). With the nexus requirement satisfied, the Court held that the trustee could not avoid the voluntary payment as preferential, because the debtor made the payment with funds held in trust, rather than funds belonging to the bankruptcy estate. *Id.* at 67, 110 S.Ct. at 2267.

In *In re Kulzer Roofing,* 139 B.R. 132 (Bankr.E.D.Pa.1992), a bankruptcy court applied *Begier* and ruled that only a voluntary

---

2. Specifically, the Court analyzed statements made by Representative Edwards, due to the key role he played in the Bill's formation and passage.

payment by the debtor or specific tracing to the funds in question would be considered reasonable assumptions that the monies maintained their trust-fund status. In *Kulzer*, the debtor did not remit amounts withheld from its employees' wages to the benefit of the employee union and commingled the funds in its general operating account. *Id.* at 137. The union sued for the recovery of the funds, arguing that *Begier* entitled it to preferential status in the Chapter 7 liquidation, and "reasonable assumptions" allowed the union to trace its trust res into the debtor's accounts receivable. *Id.* at 138–39 (emphasis in original). The Bankruptcy Court found no reasonable assumptions could be made to identify a trust *res* and thereby satisfy *Begier*. The debtor did not make a voluntary payment, nor could the creditor specifically identify the *res* in the debtor's commingled account. *Id.* at 138. The Bankruptcy Judge further stated that this type of trust claim will be disfavored and "prevail as an exception only in the narrowest of circumstances". *Id.* at 138.[3] *See also, In re Hearing of Illinois,* 110 B.R. 380 (Bankr.C.D.Ill.1990) (bankruptcy trustee could avoid an IRS levy placed on a third party for a liability owing to the debtor).

 Turning to the instant case, the Court begins its analysis with the *Begier* Court's two prong-inquiry: whether a trust for the IRS exists; and, if so, whether the funds in controversy are part of that trust.

The first question is whether the Debtor created a trust for the IRS. A trust is created at the moment an employer pays its employees. *Begier,* 496 U.S. at 62, 110 S.Ct. at 2264–65. In the instant case, the Debtor

paid its employees and withheld certain money from their paychecks to satisfy its tax obligations. Therefore, the first prong of the *Begier* inquiry is satisfied because the Debtor created a trust the moment it paid its employees and withheld the amounts for the payment of federal taxes.

The second question requires the Court to determine if a reasonable nexus exists between the funds the Debtor withheld and the funds in its NBD operating account. In making this determination the Court is directed to make the necessary "reasonable assumptions." In *Begier,* the Court reasonably assumed that a voluntary pre-petition payment of trust-fund taxes out of the debtor's assets indicated the funds had been held in trust for the IRS. *Begier,* 496 U.S. at 62, 110 S.Ct. at 2264–65. In this case, the Debtor made no such voluntary payment with the disputed funds, and the IRS admits that its levy does not constitute a voluntary payment. *Ruggeri,* 199 B.R. at 906. Therefore, the Court must be able to find a different "reasonable assumption" in order to satisfy the reasonable nexus requirement.

In this case, the Bankruptcy Court determined the assumptions needed to establish the nexus were not reasonable. *Ruggeri,* 199 B.R. at 908. The Court agrees, and for the reasons that follow, affirms the Bankruptcy Court's ruling.

The IRS first argues that but for the injunctive freeze on its operating account, the Debtor would have voluntarily paid the funds in its NBD operating account to the IRS. The only evidence in support of this assertion is the testimony of Reno Ruggeri:

---

**3.** There are many other cases in which the trust beneficiary has attempted to expand the *Begier* ruling. Almost without exception, the Bankruptcy Courts have interpreted the Supreme Court's reasonable assumptions test narrowly. *See e.g., In re Dakota Industries, Inc.,* 131 B.R. 437 (Bankr.D.S.D.1991) (nexus test is not satisfied where debtor did not actually tender payment to the IRS); *In re Spirit Holding Co.,* 166 B.R. 371 (Bankr.E.D.Mo.1994) (nexus test is not satisfied where debtor did not segregate trust-funds or make a voluntary pre-petition payment to trust beneficiary); *In re Wendy's Food Systems, Inc.,* 133 B.R. 917 (Bankr.S.D.Ohio 1991) (voluntary payment is insufficient to satisfy the nexus test where debtor's bank accounts reached a negative

balance between when the debtor collected the taxes and made the payment); *In re Hearing of Illinois, Inc.,* 110 B.R. 380 (Bankr.C.D.Ill.1990) (nexus test is not satisfied where debtor does not make a voluntary payment to the IRS); *In re Russman's Inc.,* 125 B.R. 520 (Bankr.E.D.Tenn. 1991) (nexus test is not met where the debtor has not segregated the funds or made a voluntary payment); *In re Miller,* 154 B.R. 987 (Bankr. N.D.Fla.1993) (nexus test is not satisfied where payments are not made voluntarily and in a timely fashion); *In re Mariner Enterprises of Pensacola Inc.,* 173 B.R. 771 (Bankr.N.D.Fla.1994) (trust-fund taxes incurred post-petition were not held in trust).

[NBD] was supposed to be paid first. And then the IRS was supposed to get the remaining of the funds. And then anything left over, then it was supposed to be disbursed [to the other creditors].

(Deposition of Reno Ruggeri at p. 35).

However, the facts are that the Debtor continued to make payments to other creditors ahead of NBD and the IRS subsequent to the auction. Specifically, Mr. Ruggeri agreed that the Debtor had written checks to Detroit Edison, MCI, St. Clair Shores Water Department, Michigan Bell, Professional Disposal, and Consumers Power during July of 1993. *Id.* at 37. The IRS did not object to these payments. *Id.* at 38. Although it appears that the Debtor made these payments for current operating expenses, if the funds in the operating account were actually funds held in trust, it is highly unlikely—and not a reasonable assumption—that the IRS would passively observe while the Debtor used the funds to "rob Peter to pay Paul, just to keep some money going." *Id.* at p. 11. Mr. Ruggeri's testimony seems to imply that he struggled to keep his business afloat on a day-to-day basis, and maintained no cogent plan that reached any further than staving off the inevitable for as long as possible. While he may have paid lip service to the idea of using the Debtor's collections on accounts receivable to pay his trust-fund taxes, his actions indicate otherwise.

Further, the IRS failed to treat the disputed funds as monies held in trust by the Debtor. Despite the Debtor missing its June and July 1993 payments, the IRS took no action to preserve its interest in the Debtor's property. (Deposition of Karen Johnson, p. 21). Rather, it allowed the Debtor to commingle its collections on accounts receivable and use them to pay operating expenses, which the IRS knew, or should have known, could jeopardize its future claims in the bankruptcy proceedings. (Deposition of Reno Ruggeri, p. 11). In addition, the IRS did not levy any of the businesses which owed the Debtor money, even though it clearly had the ability to do so. (Deposition of Karen Johnson at p. 28). When asked about the funds in the Debtor's NBD operating account, an IRS revenue officer stated, "[t]hey were not funds intended to be payroll taxes." *Id.* at 38. The only relationship the IRS could establish to the funds was Ms. Johnson's "understanding" that Mr. Ruggeri intended to pay the IRS for the remaining unpaid trust-fund taxes. *Id.* at 38–39. Ms. Johnson and the IRS had no written agreement with the Debtor as to the accounts receivable collections and no trust obligation would have been imposed upon NBD until it was served with a levy. A lone revenue officer's subjective belief about the Debtor's intended use of funds does not qualify as a "reasonable assumption."

The Government centers its argument around *In re Nash Concrete Form Co.*, 159 B.R. 611, 615 (D.Mass.1993), which stated that the fact that the debtor "had funds in its bank account which became subject to [the taxing authority's] levy would itself seem to prove [the debtor's] ability to remit the levied amounts." This opinion seizes upon a tiny portion of the legislative record quoted in *Begier* to produce a misleading interpretation of *Begier*'s use of the material and its holding. The *Nash* Court held that if the debtor could 'make the payments,' then the court could reasonably assume the existence of a reasonable nexus. *Id.* at 615 (*quoting Begier* 496 U.S. at 63, 110 S.Ct. at 2265). Looking at the entire passage quoted by the *Begier* Court, it becomes evident that *Nash* misinterpreted its meaning:

> A *payment* of withholding taxes constitutes a *payment* of money held in trust under Internal Revenue Code § 7501(a), and thus will not be a preference because the beneficiary of the trust, the taxing authority, is in a separate class with respect to those taxes, if they have been properly held for payment, as they will have been if the debtor is able to make the payments.

*Begier*, 496 U.S. at 66, 110 S.Ct. at 2267 (*quoting* H.R.Rep. No. 95–595 at 373) (emphasis added). Thus, the full quotation makes it apparent that the legislature intended to convey that a debtor's payment to the taxing authority would establish a reasonable nexus between the funds paid out and the funds withheld. The passage, taken as a whole, makes no mention regarding the nex-

us of funds involuntarily seized from a commingled bank account. Therefore, the *Nash* Court's reliance on the legislative record is misguided.

Next, the IRS asserts that the Debtor's $50,000 payment designated to its trust-fund debt in May of 1993, and alleged oral promises to turn over to the IRS its collections on accounts receivable, are evidence of the Debtor's intent to pay the amount in the levied operating account to the IRS but for the freeze placed upon the account.

In *In re Plummer*, 174 B.R. 284 (Bankr. C.D.Cal.1992), the debtor made three prepetition payments which it failed to designate for application towards its trust-fund liability. The debtor's principals argued that *Begier* required the IRS to apply any voluntary prepetition payments towards trust-fund debt, regardless of designation. The *Plummer* Court held that *Begier* required the debtor to designate any payments as trust-fund debt in order to establish the requisite nexus. *Id.* at 287. The Court rejected the debtor's argument that *Begier* should act "as a sword to force the IRS to apply undesignated funds toward trust-fund obligations." *Id.* at 287.

If the Court accepts the reasoning in *Plummer*, the Court must assume the Debtor properly designated its fictional "payment." However, the Court finds no mention in the record of Reno Ruggeri's intent to pay or designate the amount, other than the IRS Revenue Officer's understanding of his plans. Moreover, even if some kind of informal agreement existed between Mr. Ruggeri and the IRS collection officer, Karen Johnson, this analysis would not change because the Debtor did not make a voluntary payment; the reasons why it did not are irrelevant. In order to find for the IRS here, not only must the Court assume the Debtor intended to make the payment, but must further assume he would have designated the payment as trust fund debt. This additional assumption makes the IRS' case even more tenuous.

Finally, the IRS contends that the Debtor used the unremitted trust-funds to generate new business, increasing the its accounts receivable, which the Debtor then eventually collected and deposited into its operating account. The fallacy in this argument is that, because money is fungible, any creditor to which the Debtor failed to fully pay its antecedent debt could assert the same claim. This non-unique argument is based on conjecture, and is therefore futile.

In short, the IRS' case layers inference upon inference. It first asks the Court to assume that, but for the freeze on the operating account, the Debtor would have made a voluntary payment to the IRS. Next, the Court is asked to assume, on the strength of a single previous payment, that the Debtor would have designated this payment towards the reduction of its trust-fund debt or that the IRS would have voluntarily applied a non-designated payment entirely to the Debtor's trust-fund obligation (which would be an act of charity, as the IRS retains the ability to seek the Debtor's trust-fund obligation from Reno Ruggeri personally, *see* 26 U.S.C. § 6672(a)). Failing these two arguments, the IRS wishes the Court to assume that the commingled trust-fund taxes generated the Debtor's accounts receivable which the Debtor eventually deposited in its operating account.

The Court rejects these assumptions as unreasonable. The IRS's only remaining recourse is to argue that the Court should extend the *Begier* decision regarding voluntary payments of trust-fund tax debt to non-voluntary IRS seizures of property. The Court holds that there is insufficient support for such an extension. *Begier* holds that "any voluntary prepetition payment of trust-fund taxes out of the debtor's assets is not a transfer of the debtor's property." *Begier*, 496 U.S. at 67, 110 S.Ct. at 2267. The transfer in this case was not voluntary, and therefore it simply does not fall within the purview of *Begier*.

## V. CONCLUSION

For the foregoing reasons, °

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Bankruptcy Court's August 21, 1996,

Judgment in favor of Counter–Plaintiff–Appellee be AFFIRMED.